**Affirmed in part; and Reverse and Remand in part; and Opinion Filed June 9, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01405-CV

### GREENVILLE AUTOMATIC GAS CO., Appellant
### V.
### AUTOMATIC PROPANE GAS AND SUPPLY, LLC AND STEVEN ANDERSON,
### Appellees

**On Appeal from the 196th Judicial District Court**
**Hunt County, Texas**
**Trial Court Cause No. 77486**

## OPINION

Before Justices Myers and Schenck[1] and Chief Justice Thomas, Retired[2]
Opinion by Chief Justice Thomas, Retired

Appellant Greenville Automatic Gas Co. (Greenville) challenges the trial court's

judgment in favor of appellees Automatic Propane Gas and Supply, LLC (Automatic Propane)

and Steven Anderson in this case. The case centers on a non-competition covenant within

Anderson's employment contract with Greenville, his former employer. In three issues,

Greenville contends the trial court erred by: (1) awarding attorney's fees to Automatic Propane,

(2) submitting a jury question concerning Anderson's agreement to the terms of the employment

contract, and (3) granting summary judgment in favor of Automatic Propane on certain of

---

[1] Justice David Schenck succeeds Justice Michael O'Neill, a member of the original panel. Justice Schenck has reviewed the briefs and record in this case. *See* TEX. R. APP. P. 41.1(a).

[2] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

Greenville's counterclaims. We reverse the trial court's judgment and remand this case for further proceedings.

BACKGROUND

Greenville employed Anderson for approximately fifteen years as a route driver, delivering propane to Greenville's customers. The parties agree that, after working for Greenville for several months, Anderson signed an agreement involving his employment. Anderson contends he signed a three-page agreement that addressed only the company's method of calculating overtime pay. Greenville contends Anderson signed a nine-page employment agreement that contained—among other terms—a covenant not to compete with Greenville in certain Texas counties and a covenant not to solicit Greenville's customers after he left Greenville's employ. We will refer to the nine-page version of the contract—the only one in evidence below—as the Employment Agreement.

In 2011, Anderson resigned his position at Greenville and went to work for Automatic Propane, a competitor of Greenville. Counsel for Greenville sent letters to Anderson and to Automatic Propane invoking the covenants not to compete or solicit.

Anderson and Automatic Propane initiated this suit on November 9, 2011. They filed a declaratory judgement action that sought "to establish Plaintiffs' existing rights, statuses, and legal relations as they pertain to an Employment Agreement entered into between Anderson and Greenville." In this initial pleading, appellees stated that Anderson entered into the Employment Agreement with Greenville in 1996.[3] Appellees took the position that the covenants relating to solicitation and competition within that Employment Agreement were legally unenforceable.

---

[3] The petition purports to attach a copy of the Employment Agreement as Exhibit A, but our record does not include the attachment. The petition cites to Exhibit A nine times.

Greenville filed its answer to the petition and asserted a series of counterclaims against Anderson and Automatic Propane, including breach of contract, business disparagement, tortious interference with contract, misappropriation of proprietary material and trade secrets, conspiracy to misappropriate proprietary information and trade secrets, and unfair competition. Greenville attached the Employment Agreement to its answer.

More than a year later, at the pleading deadline, Anderson and Automatic Propane filed their first amended petition, inserting a single sentence in their recitation of the facts of the case: "Anderson disputes the execution and alleged contents of the agreement upon which Greenville has sued." The amended petition continued to assert that Anderson had signed an Employment Agreement in 1996, and that the "restrictive covenants" in that agreement were legally unenforceable.[4] The amended petition also added two counterclaims, which appellees later non-suited; it did not include any affirmative or verified defenses.

As the litigation proceeded, both parties filed summary judgment motions. Two of the motions (or parts thereof) are relevant to this appeal.

First, Greenville filed a traditional motion for summary judgment on its breach-of-contract counterclaim, contending the covenants were enforceable as a matter of law, Anderson had breached the Employment Agreement, and Greenville was entitled to attorney's fees. The trial court denied this motion.

Second, Automatic Propane and Anderson filed a combined traditional and no-evidence motion for summary judgment on Greenville's counterclaims. The trial court ultimately granted the motion on all of Greenville's tort counterclaims; it denied the motion on the breach-of-contract counterclaim.

---

[4] In their amended pleading, appellees removed the reference to the attached Employment Agreement and all cites to Exhibit A.

The breach-of-contract counterclaim was tried to a jury, but the jury did not reach a question on breach. The jury found that Greenville did not prove that Anderson had agreed on the terms of the Employment Agreement. Jurors awarded appellees $75,542.20 for attorney's fees incurred through trial and additional fees contingent on appeal. The trial court signed its judgment incorporating the jury's findings and ordering that Greenville take nothing on its tort counterclaims. Greenville appeals.

## CHALLENGE TO JURY CHARGE

In its second issue, Greenville contends the trial court erroneously submitted a jury question asking whether Greenville proved that Anderson agreed to the terms of the Employment Agreement. Greenville acknowledges that appellees' amended pleading challenged "the execution and alleged contents of the agreement upon which Greenville has sued." However, Greenville points out that appellees never verified this challenge as required by the rules of civil procedure. *See* TEX. R. CIV. P. 93(7) (requiring verification of denial of execution of written instrument upon which pleading is founded in whole or in part). In the absence of a verified pleading, Greenville argues, the Employment Agreement was admissible in evidence "as fully proved." *See id.* And because the terms of the Employment Agreement were settled in this manner, Greenville continues, the jury should never have been asked about agreement to its terms. We agree.

The question at issue, Question No. 1 in the court's charge, asked:

Did Greenville Automatic Gas prove Anderson agreed to the terms contained in the Employment Agreement?

In deciding whether the parties reached an agreement, you may consider what they said or did in light of the surrounding circumstances, including

–4–

any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.[5]

The jury answered "no" to the question, and the trial court's instructions then led jurors directly to the question concerning attorney's fees for Automatic Propane. Greenville objected to submission of Question No. 1, arguing it was precluded by the absence of a verified denial, but the trial court overruled the objection.

Appellees actually attempted to verify their challenge to "the execution and alleged contents" of the Employment Agreement. Three months after filing their amended petition, appellees filed Counter-Defendant Steven Anderson's Verification of Plaintiffs' First Amended Petition (the Proposed Verification), which purported to verify three paragraphs of the amended pleading, one of which included the above-quoted challenge. Greenville objected to the Proposed Verification as untimely, given that it was filed three months after the trial court's deadline for amending pleadings. Greenville pointed out that appellees had never filed an answer to the counterclaims that included any affirmative defense, and the Proposed Verification amounted to adding a new defensive theory after the pleading deadline. Appellees responded, arguing that neither rule 93 nor the court's scheduling order contained a timing component for verification. They argued further that—even if the verification could be interpreted to be an amended pleading—Greenville should not have been surprised by the amendment because Greenville had deposed Anderson after the amended petition was filed. During that deposition Anderson testified that he had never signed the nine-page Employment Agreement and he had no knowledge he was bound by a covenant not to compete. The trial court heard the issue and struck the Proposed Verification.

---

[5] This question and instruction essentially follow the Pattern Jury Charge forms involving the existence or formation of a contract.

Initially, we agree that if appellees were permitted to verify their pleading after the pleading was filed, they would have amended their pleading. An amendment to a pleading "is designed to 'add something to, or withdraw something from' the amending party's own pleading, so as to cure its deficiencies." *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 53–54 (Tex. 2003) (citing *Glenn v. Dallas Cnty. Bois D'Arc Island Levee Dist.*, 268 S.W. 453 (Tex. 1925)). This definition describes precisely appellees' attempt to verify their challenge to the execution and contents of the Employment Agreement: they wanted to add the verification to their first amended petition to cure its deficiency under rule 93.

A trial court has discretion to refuse a proposed amendment if (a) the amendment asserts a new defense, and thus is prejudicial on its face, and (b) the opposing party objects to the amendment. *See Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990). In this case, a verified challenge to the execution and terms of the Employment Agreement would have supported a question on the formation of that agreement; in the absence of a verified defense, appellees' attack on the Employment Agreement's existence had no proper basis in the pleadings. And Greenville objected to the Proposed Verification on that basis. We conclude the Proposed Verification would have added a new defense to the litigation after the pleading deadline and without seeking leave of court. And while addition of that new defense was likely prejudicial on its face, *see id.*, Greenville's counsel also pointed out that the discovery deadline had passed and estimated the cost of additional trial preparation that would be required in the presence of the new affirmative defense. We conclude the trial court did not abuse its discretion in sustaining Greenville's objection and striking the Proposed Verification.

As to the effect of the trial court's ruling, appellees make two arguments. First, they point to Anderson's admission that he executed the signature page of the Employment Agreement (although *not*, he contends, when it was attached to the Employment Agreement),

and they argue there was no need for a verification denying execution. We disagree. Rule 93 requires verification of a pleading setting up the "[d]enial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority." Greenville pleaded that Anderson signed the Employment Agreement and attached that document—in its full, nine-page form—to its pleading. Greenville's counterclaim for breach of the Employment Agreement was based on that nine-page form of the Employment Agreement. But Anderson denied signing it in that form. His attorney argued to the jury:

> Now, remember, it is Greenville Automatic Gas's burden to show you evidence to prove that you can answer this question yes, that Mr. Anderson agreed to that agreement. He signed something. That doesn't tell us whether he agreed to what they now claim was in the agreement.

And after the verdict was received, appellees' counsel argued to trial court:

> My client filed a dec. [sic] action saying: I never signed the agreement that you claim I signed, Greenville Gas. I never made that agreement with you.

Appellees deny the existence of the agreement on which Greenville's pleading is based. The fact that he admitted executing some other agreement is irrelevant. We conclude a verification was required in this case.

Second, appellees argue it was Greenville's obligation to prove the existence of a contract in the first instance, so the formation question was properly submitted to the jury. Greenville did prove the existence and terms of a contract by pleading and offering the Employment Agreement, which on its face was signed by Greenville's representative and Anderson. *See, e.g., Keystone Pipe & Supply Co. of Tex. v. Kleeden*, 299 S.W. 671, 673 (Tex. Civ. App.—Amarillo 1927, no writ) (formal written contracts signed by parties must be taken prima facie as expressing terms and conditions of their agreement). Appellees ignore this fundamental evidence of the contract. They ask us, instead, to approve their reliance on three

–7–

cases in which courts held that the party seeking to enforce rule 93 had not established a contract existed first. These cases are distinguishable from our own. In *Preston State Bank v. Jordan*, 692 S.W.2d 740 (Tex. App.—Fort Worth 1985, no writ), for example, the court states that the party attempting to enforce a contract "failed to introduce the contract between itself and appellee or the terms and conditions thereof." *Id.* at 744. Instead of a written agreement, signed by the parties, the appellant offered what appeared to be a page torn out of a magazine, titled "Credit Card Application," which was incomplete and failed even to identify which credit card was purportedly sought from which institution. *Id.* In the absence of evidence of any contractual relationship between the parties, the court refused to use rule 93 to enforce such a relationship. *See id.* In both *Miles v. Plumbing Services of Houston, Inc.*, 668 S.W.2d 509, 511–12 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), and *Rodriguez v. USS of Texas, Inc.*, No. 12-06-00398-CV, 2007 WL 2949643, at *3 (Tex. App.—Tyler Oct. 11, 2007, no pet.) (mem. op.), a party attempted to enforce a contract that was signed by someone other than the defendant without evidence that person signed *for* the defendant. In this case Greenville produced the formal written contract, signed by the party to be charged, i.e., Anderson. Appellees' reliance on *Jordan*, *Miles*, and *Rodriguez* is misplaced.

When Greenville pleaded breach of the Employment Agreement, and attached the Employment Agreement to its pleading, it provided fundamental evidence of the contractual relationship between the parties. If appellees wished to challenge the existence of that relationship, or the terms to which Anderson agreed, they were required to file a verified denial of Anderson's execution of the Employment Agreement that Greenville relied upon. By failing to do so, appellees conclusively admitted the validity of the Employment Agreement. *See Affordable Motor Co. v. LNA, LLC*, 351 S.W.3d 515, 521 (Tex. App.—Dallas 2011, pet. denied) (citing *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 507

(Tex. App.—El Paso 2010, no pet.)). Stated differently, the terms of the Employment Agreement were settled by the absence of a verified denial of those terms.[6] The trial court was not free to ignore appellees' failure to comply with the applicable procedural rules. *See Barcroft v. Apex Holdings, Ltd.*, No. 05-95-01453-CV, 1996 WL 743626, at \*5 (Tex. App.—Dallas Dec. 31, 1996, no writ) (not designated for publication).

We conclude the trial court erred in submitting Question No. 1 to the jury. We sustain Greenville's second issue.[7]

### SUMMARY JUDGMENT ON TORT COUNTERCLAIMS

In its third issue, Greenville contends the trial court erred by granting take-nothing summary judgment on certain of its tort counterclaims. Appellees filed both traditional and no-evidence motions on Greenville's counterclaims for business disparagement, tortious interference with contract, misappropriation of confidential information, conspiracy to misappropriate confidential information, and unfair competition. The trial court granted the motion as to all five of these counterclaims.[8]

We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We apply well-known standards in our review of traditional and no-evidence summary judgment motions. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). With respect to a

---

[6] By asserting that the terms of the Employment Agreement are settled we do not foreclose litigation of the meaning or enforceability of those terms. For example, appellees may argue on remand that the covenant not to compete in the Employment Agreement is unenforceable, but they may not argue that it does not exist.

[7] Given our disposition of this second issue, we do not reach Greenville's first issue concerning the propriety of the trial court's attorney's fee award to appellees. We reverse that attorney's fee award today solely because—given our conclusion that Question No. 1 should not have been submitted to the jury—there is no finding supporting or denying liability of either party. In the absence of such a finding, the award of attorney's fees must be vacated. We express no opinion on the matters raised in Greenville's first issue concerning the attorney's fees awarded by the trial court.

We likewise do not reach procedural issues discussed in the parties' briefing, including admissibility of expert testimony, effectiveness of language in the judgment concerning payment of fees, and whether Greenville should have been allowed to open and close at trial.

[8] Greenville did not appeal the summary judgment and dismissal of its counterclaim for business disparagement; accordingly, that dismissal is final.

traditional motion, the movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence motion under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary judgment motion, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i). Throughout our review we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When both no-evidence and traditional summary judgment motions are filed, we generally address the no-evidence motion first. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). However, when the traditional motion is clearly dispositive of an issue in the motion, we may look to it first on that issue. *See id.*

*Tortious Interference With Contract*

Greenville pleaded that Automatic Propane tortuously interfered with both Anderson's Employment Agreement and Greenville's contracts with its customers; it also pleaded that Anderson tortuously interfered with Greenville's contracts with its customers. To recover for tortious interference with a contract, Greenville would have to prove: (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) the act was a proximate cause of damages, and (4) actual damages or loss. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). In their no-evidence motion, appellees asserted that Greenville had no evidence of each of those four required elements.

–10–

We first examine Automatic Propane's alleged interference with Anderson's Employment Agreement in light of the second element of the alleged tort. "To establish a willful and intentional act of interference, there must be evidence that the defendant was more than a willing participant—the defendant must have knowingly induced one of the contracting parties to breach its obligations under a contract." *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 53 (Tex. App.—Texarkana 2012, pet. denied) (citing *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)). The willful act could not merely be Automatic Propane's hiring of Anderson: the parties agree Anderson was an at-will employee. *See Lazer Spot, Inc.*, 387 S.W.3d at 53 ("a claim of tortious interference cannot be premised merely on the hiring of an at-will employee, without more"); *see also ACS Investors, Inc.*, 943 S.W.2d at 430 (merely inducing contract obligor to do what it has right to do under subject contract is not actionable interference). Greenville contends Automatic Propane was aware— before it hired Anderson—that some of Greenville employees were bound by contractual covenants not to compete. But Greenville has failed to come forward with summary judgment evidence indicating Automatic Propane had knowledge of *Anderson's* covenant before he was hired. Instead, the first indication in the record that Automatic Propane knew of restrictions on Anderson's employment came when Greenville counsel advised the company of the Employment Agreement, at least a month after Anderson left Greenville and began working there. We discern no summary judgment evidence of a willful, intentional act of interference with Anderson's Employment Agreement on the part of Automatic Propane.

As to Greenville's claim that both appellees interfered with contracts between Greenville and its customers, we conclude Greenville again failed to carry its summary judgment burden. There is no summary judgment evidence of any Greenville customer contract, written or oral, that could be subject to interference by either Automatic Propane or Anderson. Instead, the

summary judgment record includes testimony from Greenville's president that the only restriction it could enforce against its customers was to prohibit competitors from filling tanks that were rented from Greenville. He acknowledged that Greenville could not force any customer to purchase its propane. Nor could Greenville prevent any customer from obtaining a tank and propane from a competitor.

We conclude Greenville failed to carry its burden to come forward with summary judgment evidence sufficient to raise a fact issue on each element of its tortious interference counterclaims. The trial court did not err in granting summary judgment on those claims.

*Misappropriation of Proprietary Information and Trade Secrets*

Greenville pleaded that Automatic Propane and Anderson used Anderson's confidential knowledge of Greenville's customers to damage Greenville. Under Texas law, a plaintiff can recover for misappropriation of trade secrets by establishing (1) the existence of proprietary information or a trade secret, (2) a breach of a confidential relationship or improper discovery of the information or secret, (3) a use of the information or secret without the plaintiff's authorization, and (4) resulting damages. *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 737–38 (Tex. App.—Dallas 2010, no pet.). In their no-evidence motion, appellees challenged Greenville's ability to bring forward evidence sufficient to raise an issue of material fact on each of these elements.

In its response, Greenville pointed to Anderson's knowledge of Greenville's "customer lists, customer addresses, customer phone numbers, customer creditworthiness, whether the customer owned [its] tank, [and] customer routes" as information that was taken from Greenville contrary to the Employment Agreement and without Greenville's permission. However, even if we assume—without deciding—that this list of materials is sufficiently proprietary to support a misappropriation tort, Greenville did not offer summary judgment evidence of either appellee's

–12–

use of the confidential information. Greenville points to Anderson's testimony that he serviced some of the same customers for Automatic Propane that he had serviced for Greenville. Based on that statement alone, Greenville concludes Anderson "must have used the names and addresses of the customers, at a minimum." But Automatic Propane could have developed its own customer list in any number of ways—this is not evidence of use of confidential information sufficient to defeat appellees' no-evidence summary judgment motion.

We conclude the trial court did not err in granting summary judgment for appellees on Greenville's claim for misappropriation of proprietary information and trade secrets.

*Conspiracy to Misappropriate Proprietary Information and Trade Secrets*

Greenville also pleaded that Automatic Propane and Anderson conspired to misappropriate Greenville's proprietary information and trade secrets. In this instance, we look to appellees' traditional motion for summary judgment for the most direct resolution of Greenville's claim. Both Greenville and appellees acknowledge that civil conspiracy is a derivative tort. *See Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008). Stated differently, conspiracy requires an underlying tort reflecting an unlawful means or purpose by the conspirators. *Id*. We have already concluded the trial court properly granted summary judgment on and dismissed Greenville's misappropriation claim. In the absence of that misappropriation claim, there can be no claim for a conspiracy to commit misappropriation.

We conclude the trial court did not err in granting summary judgment on Greenville's civil conspiracy claim.

*Unfair Competition*

Under the heading of Unfair Competition, Greenville pleaded that Automatic Propane and Anderson engaged in "conduct that is contrary to honest practice in industrial or commercial matters." Looking again to appellees' traditional motion, they argue that unfair competition is

–13–

not an independent tort. Rather, they contend that—like conspiracy—unfair competition is a derivative tort that requires a viable underlying tort or other illegal conduct for liability to exist. We agree. *See, e.g.,Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied) ("Without some finding of an independent substantive tort or other illegal conduct, we hold that liability cannot be premised on the tort of 'unfair competition.'") (quoting *Featherstone v. Indep. Serv. Station Ass'n*, 10 S.W.2d 124, 128 (Tex. Civ. App.—Dallas 1928, no writ)). We have concluded that the trial court did not err in granting summary judgment in appellees' favor on each of Greenville's tort counterclaims that are before us. In the absence of any underlying tort or illegal conduct, the trial court did not err in granting summary judgment on the unfair competition claim as well.

We overrule Greenville's third issue.

## CONCLUSION

We affirm the trial court's judgment insofar as it ordered that Greenville take nothing on its counterclaims for business disparagement, tortious interference with contract, misappropriation of proprietary information and trade secrets, conspiracy to misappropriate proprietary information and trade secrets, and unfair competition. In all other respects, we reverse the trial court's judgment. We remand the case to the trial court for further proceedings consistent with this opinion.

131405F.P05

/Linda Thomas/
LINDA THOMAS
CHIEF JUSTICE, RETIRED



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GREENVILLE AUTOMATIC GAS CO.,
Appellant

No. 05-13-01405-CV      V.

AUTOMATIC PROPANE GAS AND
SUPPLY, LLC AND STEVEN
ANDERSON, Appellees

On Appeal from the 196th Judicial District
Court, Hunt County, Texas
Trial Court Cause No. 77486.
Opinion delivered by Chief Justice Thomas,
Retired. Justices Myers and Schenck
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED** in part and **REVERSED** in part.

We **AFFIRM** the trial court's judgment insofar as it orders that Greenville Automatic
Gas Co. shall take nothing on its counterclaims for business disparagement, tortious interference
with contract, misappropriation of proprietary information and trade secrets, conspiracy to
misappropriate proprietary information and trade secrets, and unfair competition.

In all other respects, the trial court's judgment is **REVERSED**. We **REMAND** this
cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Greenville Automatic Gas Co. and appellees Automatic
Propane Gas and Supply, LLC and Steven Anderson shall each bear their own costs of this
appeal.

Judgment entered June 9, 2015.