**AFFIRM; and Opinion Filed August 7, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

___

### No. 05-17-01217-CV

___

### STEVEN L. KENNEDY, Appellant
### V.
### LACY HARBER AND DOROTHY HARBER, Appellees

___

### On Appeal from the 59th Judicial District Court
### Grayson County, Texas
### Trial Court Cause No. CV-15-0431

___

# MEMORANDUM OPINION

Before Justices Francis, Evans, and Boatright
Opinion by Justice Boatright

This lawsuit involves a number of claims between appellant Steven Kennedy and appellees

Lacy and Dorothy Harber involving construction projects they undertook together. Kennedy

appeals the trial court's denial of his Motion to Dismiss the Harbers' counterclaims under Chapter

27 of the Texas Civil Practice & Remedies Code and its grant of the Harbers' motion for summary

judgment on his own affirmative claims. We affirm the trial court's judgment.

## Background

Kennedy and the Harbers were long-time friends and business associates. In 2013, when

events governing this lawsuit took place, Kennedy and the Harbers had been involved in real estate

construction projects in Nevada and California for approximately four years. Kennedy served as

the project manager for these undertakings; the Harbers provided the funding. Among the projects

they undertook was the planning and construction of a Las Vegas museum celebrating Wayne

Newton. However, after much time and money was expended on that project, personal relationships devolved, and CSD, LLC—the company formed by these parties to operate the project—filed bankruptcy. The Newton project ended up in litigation involving the Harbers, Kennedy, and many more parties.

During and after the Newton project, Kennedy had overseen other projects for the Harbers: he had been paid for some of his work, but not for all of it. The Newton project had left the Harbers short of funds. In March 2013, Kennedy and the Harbers met and agreed that Kennedy was due $2 million as payment for these projects. The Harbers orally agreed to transfer to him a property called the Scenic House, which was purportedly worth $3.5 million. In return, Kennedy would sell the property and return $1.5 million to the Harbers. Kennedy also agreed that he would support a global settlement of the Newton dispute that would release his claims involving the Newton project for $100,000.

Kennedy, the Harbers, and the other parties to the Newton project litigation signed the Settlement Agreement in April, and Kennedy was paid $100,000. However, the Harbers refused to transfer the Scenic House to him or otherwise to pay him the $2 million negotiated in the March oral agreement, asserting that the Settlement Agreement included a release of all claims between them and Kennedy.

Kennedy sued the Harbers alleging breach of contract, fraud, quantum meruit, unjust enrichment, promissory estoppel, negligent misrepresentation, and sought a declaratory judgment that the release in the Settlement Agreement was unconscionable. The Harbers filed counterclaims against Kennedy, including breach of contract, fraud, breach of fiduciary duty, accounting, and theft.

The Harbers filed their motion for summary judgment early in the proceedings; it was heard finally on September 25, 2017. The motion contained a traditional component based on the

`
.

Harbers' affirmative defenses of release and the statute of frauds, as well as no-evidence challenges to Kennedy's affirmative claims. That same day, Kennedy filed his motion for summary judgment and his motion to dismiss under chapter 27 of the Texas Civil Practices and Remedies Code, commonly known as the Texas Citizens' Participation Act, or TCPA. We have the reporter's record of this hearing. The transcript contains Kennedy's request for the trial court to wait to rule on the Harbers' motion until it had heard both of Kennedy's motions that week before trial. But the trial judge sent a letter the next day saying he had decided to grant the Harbers' motion.

The trial court signed orders on October 2, 2017—the date trial was scheduled to begin—indicating that (a) Kennedy's motion for leave and for summary judgment on the Harbers' counterclaims was granted, and (b) his motion to dismiss under the TCPA was denied. We have no reporter's record of a hearing from October 2, but the parties agree that the trial court ruled on the summary judgment motion first.

The trial court combined these rulings in its final judgment, the result of which was that all parties took nothing on their claims. Kennedy appeals that judgment; the Harbers do not.

### Kennedy's Motion to Dismiss under Chapter 27

Kennedy's first two issues challenge the trial court's order denying his motion to dismiss. Kennedy argues that the trial court had no authority to deny the motion "without notice, hearing, or response." And he contends that the motion was proper under the TCPA because the Harbers' counterclaims were filed in response to his own exercise of the right to petition. The Harbers argue that Kennedy's motion to dismiss was untimely under the parties' agreed scheduling order, mooted by the granting of his summary judgment motion, and unsuccessful on the merits.

Kennedy claims that he did not get a hearing on his motion to dismiss under chapter 27. The Harbers dispute this. They explain that Kennedy filed a motion for continuance in which he acknowledged that a hearing on his motion to dismiss was set for October 2, 2017. The Harbers

`
.

also note that the trial court's final judgment stated that the parties appeared in person on October 2, 2017. And the Harbers point out that there is no written objection, motion for new trial, or other evidence in our record showing that Kennedy had earlier complained about being denied a hearing and that the trial court either ruled or refused to rule on his complaint. Kennedy has therefore failed to preserve his complaint for our review. TEX. R. APP. P. 33.1(a).

Kennedy also argues that he is entitled to court costs, attorney's fees, expenses, and sanctions under chapter 27. He would be entitled to those awards, however, only "[i]f the court orders dismissal of a legal action under this chapter." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (West 2015). The trial court did not dismiss the Harbers' counterclaims under chapter 27, but instead under Kennedy's summary judgment motion. Consequently, Kennedy is not entitled to costs and sanctions under section 27.009(a).

Kennedy also argues that the trial court erred in denying his motion to dismiss, because his motion was sufficient under chapter 27. However, Kennedy acknowledges that the court's summary judgment addressed the same counterclaims at issue in his motion to dismiss. He cites no legal authority that would allow him to complain of the trial court's failure to dismiss counterclaims that were already defeated by summary judgment. The Harbers argue that his chapter 27 claims are moot. A case or an issue becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 586 (Tex. 2017). We are prohibited from deciding moot controversies. *Klein v. Hernandez*, 315 S.W.3d 1, 3 (Tex. 2010). Consequently, we will not opine on the merits of Kennedy's motion to dismiss.

We conclude that the trial court's denial of Kennedy's motion to dismiss was proper, that no part of it remains pending, and that Kennedy is not entitled to an award of any kind under chapter 27.

`
.

**The Harbers' Motion for Summary Judgment on Kennedy's Claims**

Kennedy's remaining issues challenge the trial court's grant of summary judgment in favor of the Harbers on the claims Kennedy pleaded for breach of contract, fraud, negligent misrepresentation, quantum meruit, promissory estoppel, unjust enrichment, and unconscionability. The Harbers' motion urged both traditional and no-evidence grounds. When both no-evidence and traditional summary judgment motions are filed, we generally address the no-evidence motion first. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004). However, when the traditional motion is clearly dispositive of issues in the motion, we may look to it first on those issues. *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 786 (Tex. App.—Dallas 2015, no pet.). The traditional summary judgment movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). We consider the summary judgment evidence in the light most favorable to the nonmovant, *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008), crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not, *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Within the framework of these standards, we review the summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

*The Release*

Three of Kennedy's summary judgment issues challenge the Harbers' reliance on the Settlement Agreement's release by the "Harber Parties," who are defined to include the Harbers and Kennedy. The parties concede that the release is broad. It states:

> Releases by the Harber Parties. On the Effective Date, and immediately, without need for any further action, order, or document, each of the Harber Parties, for themselves, and for any person who may be able to claim derivatively or otherwise through any of them, hereby waive, release, and forever discharge each of the

`
.

Debtor, the other Harber Parties, and the Newton Parties, and all of their directors, officers, shareholders, employees, representatives, members, agents, attorneys, affiliates, successors, and predecessors, from any and all claims, obligations, counterclaims, offsets, demands, actions, causes of action, and liabilities, of whatever kind and nature, character and description, whether in law or equity, whether sounding in tort, contract or under other applicable Jaw, whether known or unknown, and whether anticipated or unanticipated, which any of them ever had, now has, or may ever have had, including, without limitation, any claim asserted in the State Court Action and the Kennedy Claim and the CSDM Claims; provided, however, that nothing in this Agreement releases any Party from any right or obligation under this Agreement; provided further, however, that nothing in this section or in this Agreement releases, waives, or discharges any of the DLH Claims or the Neva Lane Claim.

Kennedy does not dispute that he signed the Settlement Agreement containing this release.

*Claims Not Addressed in the Summary Judgment Motion*

In his third issue, Kennedy argues a trial court may not grant a summary judgment as to all of a plaintiff's claims when some of the claims were never addressed in the motion. He contends that the Harbers' summary judgment motion failed to address his pleaded "claims" of unconscionability and unjust enrichment, prohibiting summary judgment on those grounds. (The trial court did list these two grounds in its order granting the Harbers' motion.) Indeed, Kennedy argues that because unconscionability was his defense to the Settlement Agreement, the Harbers' failure to move for judgment on that basis should preclude *any* judgment based on the Settlement Agreement. It is true that summary judgment may not be granted on a claim not raised in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993). However, we disagree that Kennedy's pleadings allow these grounds to thwart summary judgment for the Harbers.

Kennedy seeks to set aside the release employing the legal theory of unconscionability. This theory is an affirmative defense, and Kennedy has the burden of proof on it. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015). Unconscionability is not an affirmative claim on which Kennedy could prevail and make a recovery against the Harbers.

`
.

Likewise, unjust enrichment is not an independent cause of action on which Kennedy could prevail: instead, unjust enrichment "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay." *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.). Stated differently, unjust enrichment is an equitable measure of damages. We disagree with the trial court's judgment insofar as it recites that it granted summary judgment on these grounds. However, neither unconscionability nor unjust enrichment provides Kennedy with an affirmative claim that has survived summary judgment.

*Defenses to the Release*

In his fourth issue, Kennedy argues that when a party pleads unconscionability and fraudulent inducement as defenses to enforceability of a release, the trial court cannot grant summary judgment based on the release itself. We disagree. The court can do so if the party relying on the release proves the release as a matter of law, and the non-movant fails to raise a material fact issue on its defense. A defendant moving for summary judgment on an affirmative defense such as release bears the burden of proving the affirmative defense. *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975). In this case, the Harbers' summary judgment evidence included an executed copy of the Settlement Agreement containing the release and Mr. Harber's affidavit, which stated that the release was intended to address the claims Kennedy made in this lawsuit. The Harbers' evidence proves the release, which is valid on its face until set aside. *Id.* at 201.

As the party opposing summary judgment based on an affirmative defense, Kennedy was required to come forward with evidence sufficient to raise an issue of fact on each element of that defense to avoid summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). Absent that evidence, the release provides a complete bar to any later action based on matters covered in the release. *Hart v. Traders & Gen. Ins. Co.*, 189 S.W.2d 493, 494 (Tex. 1945).

`

Kennedy did not carry his burden to offer summary judgment evidence on these defenses. Indeed, as to unconscionability, he continues to argue that the Harbers failed to negate the "claim." But our summary judgment procedure did not allow Kennedy to rely on the Harbers to disprove his defense; it was his burden to prove that unconscionability was a viable defense to the release. *Brownlee*, 665 S.W.2d at 112. He points us to no evidence that satisfies that burden, and our review of the summary judgment record fails to identify such evidence.

"A release attacked on the ground of fraud is not void as a matter of law simply because a party alleges fraud." *Deer Creek Ltd. V. N. Am. Mortg. Co.*, 792 S.W.2d 198, 202 (Tex. App.—Dallas 1990, no pet.). And Kennedy does attempt to identify summary judgment evidence establishing a fact issue on his defense of fraudulent inducement. His affidavit describes the Harbers' representations to him concerning the $2 million payment, alleges that the representation was false when made, and relates the Harbers' failure to pay after Kennedy signed the Settlement Agreement as he had promised them he would. The affidavit states that he did so in reliance on the promise of payment—that he never would have signed the release except for the oral agreement. But in these circumstances, Kennedy cannot establish that his reliance on the Harbers' promise to pay was justifiable, a critical element of his fraudulent inducement defense. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). Although justifiable reliance usually presents a question of fact, circumstances can exist that negate the element as a matter of law. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018). One of those circumstances involves reliance that is in direct contradiction to an express provision of the written agreement. Reliance on an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law. *Id.* at 658. In this case, the release on its face unambiguously applies to all claims Kennedy had against the Harbers at the time of its signing. In addition, the Settlement

`
.

Agreement included an express provision superseding any earlier oral agreements between the parties, stating:

> Entire Agreement. This Agreement constitutes the entire agreement among the Parties and supersedes all prior and contemporaneous agreements, representations, warranties, and understandings of the Parties, whether oral, written, or implied, as to the subject matter hereof. No supplement, modification, or amendment of this Agreement or waiver of rights hereunder shall be binding unless executed in writing by all Parties.

As a matter of law, Kennedy could not have justifiably relied on the Harbers' promise under these circumstances. Accordingly, Kennedy has failed to raise a fact issue on his defense of fraudulent inducement, and that defense cannot serve to avoid summary judgment on the ground of release.

*Scope of the Release*

In his fifth issue, Kennedy contends that the release cannot be applied to claims that were not mentioned in the release and that were not related to the subject matter of the Settlement Agreement in which the release is contained. He contends further that the Settlement Agreement is limited to the "Newton claims" against the other parties and can have no bearing on his personal claims against the Harbers. We disagree with Kennedy's characterization of the scope of the release.

Initially, the structure of the Settlement Agreement argues against Kennedy's interpretation. The agreement contains separately numbered and titled paragraphs in which the Harber Parties obtain releases from the Newton Parties, the bankruptcy estate, and each other. If the Settlement Agreement's subject matter were limited to the Newton claims—whether bankruptcy-related or not—there would be no need for a separately structured release for claims between and among the Harber Parties.

In addition, the broad language of the Harber Parties' mutual release speaks to its scope. The release addresses "any and all claims, obligations, counterclaims, offsets, demands, actions, causes of action, and liabilities, of whatever kind and nature, character and description, whether in

`

law or equity, whether sounding in tort, contract or under other applicable law, whether known or unknown, and whether anticipated or unanticipated, which any of them ever had, now has, or may ever have had, including, without limitation, any claim asserted in the State Court Action and the Kennedy Claim and the CSDM Claims." It is not limited to a specific claim or transaction but rather speaks to all possible claims one of the Harber Parties could lodge against another. The law does not forbid such a broad-form release. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000). And the requirement that a released claim must be "mentioned" in the release does not demand that the parties identify every potential cause of action relating to the release's subject matter. *Id.*

We conclude that the Settlement Agreement was intended to release—and did release—all existing claims that Kennedy could have asserted against the Harbers on the date of that release. Accordingly, the trial court did not err in granting a traditional summary judgment on Kennedy's later-filed claims for breach of contract, fraud, negligent misrepresentation, quantum meruit, and promissory estoppel. Because we have concluded that the Harbers' defense of release supports the court's traditional summary judgment, we need not address their alternative defense of the statute of frauds or their alternative no-evidence motion.

## Conclusion

We affirm the trial court's judgment.

/Jason Boatright/
_____
JASON BOATRIGHT
JUSTICE

171217F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN L. KENNEDY, Appellant

No. 05-17-01217-CV     V.

LACY HARBER AND DOROTHY
HARBER, Appellees

On Appeal from the 59th Judicial District
Court, Grayson County, Texas
Trial Court Cause No. CV-15-0431.
Opinion delivered by Justice Boatright.
Justices Myers and O'Neill participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

     It is **ORDERED** that appellees LACY HARBER and DOROTHY HARBER recover their costs of this appeal from appellant STEVEN L. KENNEDY.

Judgment entered this 7th day of August, 2018.