**Dissenting Opinion Filed August 20, 2021**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-00274-CV**
_____

**STEWARD HEALTH CARE SYSTEM LLC AND SOUTHWEST GENERAL HOSPITAL, LP, Appellants**
**V.**
**FRANK SAIDARA, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-16862**

## DISSENTING OPINION

Before the Court En Banc
Dissenting Opinion by Justice Carlyle

Though I join my dissenting colleagues in concluding that allegations in a special appearance response may be considered on appeal, I write separately because I disagree that personal jurisdiction here is limited to plaintiffs' fraud and unfair competition claims. I would conclude the trial court has specific personal jurisdiction over all of plaintiffs' claims.

The plaintiffs' claims here all arise from or are related to the same forum contacts, and we need not perform the minimum contacts inquiry on a claim-by-claim basis. *Cf. Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150–51

& n.6 (Tex. 2013). No case mandates us to perform a claim-by-claim analysis here, certainly not *Moncrief*, which did not hold that courts must always analyze minimum contacts on a claim-by-claim basis. *Id*. We are only required to do that when the claims arise from different forum contacts. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

The allegations here are that Saidara engaged in a course of fraud during months of business acquisition negotiations, culminating in misappropriation and illegal file downloading from a virtual clean room. *See* TEX. CIV. PRAC. & REM. CODE §§ 134A.001, *et seq.*; 143.001, *et seq.* They include the derivative tort of unfair competition.[1] The wrinkle is that, though Saidara visited Texas during the course of negotiations at least once and purportedly committed the fraud that is part of the basis of the case, at least in part in Texas, he wrongly raided the virtual clean room from his home state of California. I view this as a course of the same forum contacts, which leads me to the conclusion that the trial court incorrectly granted the special appearance. *See Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 26 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 440–42 (W.D. Tex. 2007).

---

[1] *See KBIDC Invs., LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *5 n.4 (Tex. App.—Dallas Oct. 9, 2020, pet. filed) (citing *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 788 (Tex. App.—Dallas 2015, no pet.) (unfair competition is a derivative tort)).

No case or statute ties our hands to make only one conclusion about whether the forum contacts here arise from or are related to the appropriate degree. It is, as our decisions often are, a judgment call. We apply the law and common sense to reach our conclusions.

In deciding whether a plaintiff's claims are related to the same forum contacts, we must resist the urge to overanalyze petitions and should not commit the judicial institution to hypertechnical readings. After all, a plaintiff's petition is only required to provide opponents "fair notice." *See* TEX. R. CIV. P. 45; *B.G.C. v. M.Y.R.*, No. 05-20-00318-CV, 2020 WL 5987913, at *3 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op.). Perhaps we appellate courts could provide the trial courts guidance on how to analyze petitions to discern whether to aggregate minimum contacts on a claim or treat each contact as separate, though it strikes me as a mushy endeavor at best. Perhaps common sense is the best guide.

As noted, the plaintiffs here have plainly stated a course of fraud that culminated in a logical way, namely, trade secret theft via unauthorized electronic access obtained through misrepresentations. Saidara and Prospect Medical reached out to the Texas company Southwest General to acquire that business in Texas. Saidara visited Southwest General in Texas with colleagues, and then, after some time, allegedly raided the clean room. Texas entity Southwest General set up the clean room for the purpose of facilitating the negotiations and acquisition here in Texas. This cluster of contacts by Saidara to Texas establishes sufficient connection

between the allegations and Texas to confer jurisdiction on the trial court and the claims should proceed to trial before the same jury instead of one jury in Texas on two claims and one in California on the other two claims.[2]

Even if I did not view the contacts in aggregation and instead analyzed the claims' contacts separately, I would conclude the court had jurisdiction over the statutory claims. We are faced with the intersection of technology and somewhat ancient law. Until recently, Southwest General would have physically crafted a secure room, likely in San Antonio, with appropriate physical security in place. Of course, now, this is less cost- and time-effective than providing secure electronic access to files to a limited group of people for them to access when and where they desire.

It would have been no surprise to any party that Saidara accessed the clean room from a computer in California. This was likely the intent of the parties, and saved both parties the expense of establishing a physical clean room either in Texas or California.[3] I view the access by a California entity of a Texas company's files as part of a potential acquisition of a Texas company to be an act directed at Texas. *See Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 72–73 (Tex. 2016) (concluding specific jurisdiction existed where defendants'

---

[2] I would also conclude fundamental fairness allows all four claims the plaintiffs bring here, though that precise discussion is unimportant to the narrow legal issue I focus on here.

[3] Though the parties here executed a "Clean Team Confidentiality Agreement," that agreement did not include a forum-selection provision establishing personal jurisdiction.

"overarching transaction" "specifically sought both a Texas seller and Texas assets"); *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 73–75 (Tex. 2016) (Canadian company negotiating for Colombian assets that happened to have been controlled by Texas company did not have sufficient contacts with Texas because it "did not specifically seek out a Texas seller or Texas assets"); *see also Searcy* at 93–94 (Guzman, J., dissenting, joined by Boyd, J.) (thoroughly discussing cases from across the country finding jurisdiction with limited contacts even when parties are in different states than the forum). The supreme court recently reaffirmed this concept, analyzing the "quality and nature" of the defendant's purposeful availment activity and its "'intent or purpose' to target the Texas market." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 12 (Tex. 2021).

The misappropriation claim, as pled, requires some form of using "improper means" to access the trade secret. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(3). In their misappropriation claim, the plaintiffs stated, "Prospect and Saidara acquired the trade secret information through improper means, including through fraud." Thus the plaintiffs have pled that part of the action required to support liability occurred in Texas. *See id.*; *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 726–27 (2d Cir. 2012) (jurisdiction existed in Connecticut over Canadian defendant who accessed

Connecticut computer server to misappropriate information belonging to her employer).[4]

I would reverse the trial court and remand for further proceedings consistent with this opinion.

190274f.p05

/Cory L. Carlyle//
CORY L. CARLYLE
JUSTICE

Molberg and Nowell, JJ., join this dissenting opinion

---

[4] There can be no dispute that as the legal system "struggles to keep pace with rapidly evolving technology," the law of personal jurisdiction "is not immune to this struggle." Note, *Minimum Virtual Contacts: A Framework for Specific Jurisdiction in Cyberspace*, 116 MICH. L. REV. 785 (2018). I agree that "[c]ourts should recognize that, while notions of territory are blurred on the internet, some virtual contact is established between forums through online transactions," and there is a "need for a modified minimum virtual contacts model that accounts for the nuances presented by changing technology." *Id.* at 789. Regardless, the facts of this case are not limited solely to an online transaction but rather, as described above, involve alleged misrepresentations in Texas that are a component of the misappropriation claim.