**Opinion issued January 29, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00242CV

_____

**JUSTIN CARL PFEIFFER, Appellant/Cross-Appellee**

**V.**

**DAVID H. BERG AND DAVID H. BERG & ASSOCIATES PC, D/B/A BERG & ANDROPHY, Appellees/Cross-Appellants**

---

On Appeal from the 269th District Court
Harris County, Texas
Trial Court Case No. 2022-60439

---

## OPINION

Appellant Justin Carl Pfeiffer sued his former law firm, David H. Berg & Associates PC, d/b/a Berg & Androphy, and David H. Berg for breach of contract claiming they owed him outstanding wages for work he performed while still

affiliated with the firm. The trial court denied Appellant's motion for partial summary judgment, and the case proceeded to a trial. The jury found in favor of the firm and the trial court entered judgment for Appellees ordering that Appellant take nothing on his claim.[1]

In seven issues, Appellant argues the trial court erred by (1) denying his motion for partial summary judgment because he established as a matter of law the existence of an employment relationship; (2) disallowing his discovery requests; (3) allowing the admission of irrelevant and prejudicial testimony; (4) refusing to instruct the jury on "basic principles of contract law in the employment setting"; (5) failing to take judicial notice of an attorney of record's duties under California law; (6) denying his motion for entry of judgment after disposing of Appellees' counterclaims; and (7) not recusing from the matter.

By cross-appeal, Appellees argue the trial court erred in declining to issue sanctions against Appellant under Chapter 10 of the Texas Civil Practice & Remedies Code and Texas Rule of Civil Procedure 13.

We affirm.

---

[1] The trial court granted a directed verdict in favor of Appellee David. H. Berg. Appellant does not appeal from that ruling.

## Background

Appellee H. Berg & Associates PC, d/b/a Berg & Androphy—a Houston-based law firm—represented Bela and Martha Karolyi in several California-based lawsuits arising out of Dr. Larry Nassar's sexual molestation of members of the U.S. Women's Gymnastics World Championship and Olympic Teams.[2]  The Texas-based Karolyis were the head coaches for the teams.

In September 2017, Berg & Androphy hired Appellant Justin Carl Pfeiffer to work as an associate at the firm with an annual salary of $170,000 and insurance benefits.  Pfeiffer, who was licensed to practice law in California and Texas, worked on the Karolyi cases, and he sponsored a *pro hac vice* application for Appellee David Berg in a Karolyi matter pending in California federal court. Pfeiffer sponsored and filed the application in May 2018.

A few months later, in September 2018, the firm requested Pfeiffer's resignation.  According to Appellees, Pfeiffer's work product was "spotty," and he exhibited "poor judgment."  Appellees alleged Pfeiffer engaged in what the firm believed were inappropriate communications with staff and clients, including "constant communications" about his relationship with his then-boyfriend (now

---

[2]  More than 150 women and girls accused Nassar of sexually abusing them under the guise of providing medical treatment over two decades. https://www.cnn.com/2023/07/10/us/larry-nassar-stabbed-prison (last viewed January 15, 2026).  He was sentenced to decades in prison for the assaults. https://www.lex18.com/news/national/larry-nassar-loses-last-appeal-in-sexual-assault-scandal (last viewed January 15, 2026).

husband), and his relationship to Spanish royalty. Appellees also alleged Appellant violated orders of the firm by communicating directly with opposing counsel without first consulting the partner on the file, and that at some point, he divulged attorney-client communications to opposing counsel potentially compromising the Karolyis' legal position.

In September 2018, partners at the firm told Pfeiffer that he was not a "good fit" and "he had to move on." He was escorted out of the firm, locked out of the computer system, asked to return the keys to his office, and the locks on the doors to the firm were changed. Pfeiffer contends he resigned, while Appellees argue Pfeiffer was terminated but that the firm gave him an opportunity to tender his resignation to make it easier for him to secure future employment.[3]

Claiming he was owed compensation for services performed for the firm after his September 2018 departure, Pfeiffer filed an unemployment claim with the Texas Workforce Commission ("TWC"). Appellees responded that Pfeiffer had performed no services for the firm after September 2018. The TWC ultimately concluded it lacked jurisdiction over Pfeiffer's claim.[4]

---

[3]  Pfeiffer received his final paycheck from the firm on September 30, 2018, which included his salary and an additional amount of approximately $10,000. Appellees contend this amount represented severance pay, whereas Pfeiffer contends the money was paid as compensation for his services through October 5, 2018.

[4]  Pfeiffer also filed a wage claim with the California Labor Commission, but the Commission declined jurisdiction over the case.

On November 2, 2018, the firm filed a motion to withdraw in the Karolyi California matter requesting that Pfeiffer be removed from the pleadings. The California court granted the motion on November 27, 2018. Pfeiffer argued he was entitled to wages through November 27, because he remained "attorney of record" in the Karolyi federal case and continued to work on the case until then. Appellees disagreed, arguing his last day of employment had been September 20, 2018—the date he departed the firm—and therefore that was the last day for which he was entitled to payment.

The dispute escalated. Pfeiffer filed suit against Berg and the firm for breach of contract, claiming the firm had breached his employment contract by limiting his communications with the Karolyis after September 20, 2018, and failing to follow the California Rules of Professional Conduct and the California Rules of Court in moving for his withdrawal in the Karolyi California matter.[5] According to Pfeiffer, he "agreed to resign [from the firm] after the Central District of California . . . entered an order relieving [him] of his duties as attorney of record." He alleged that he drafted a letter of "conditional resignation" on October 30, 2018, offering to "resign [from the firm] voluntarily upon the grant of his

---

[5] Pfeiffer also filed a disciplinary complaint against Berg with the California Office of Disciplinary Conduct and with the Texas State Bar Office of Disciplinary Counsel. Both cases were dismissed. Pfeiffer also sued Appellees in California Superior Court to recover the same wages he seeks in this matter. The case was dismissed and Pfeiffer appealed. Appellees' brief states that the appeal remains pending.

withdrawal motion" only if the firm secured consent to file the withdrawal motion from the Karolyis and "paid [him] for the services within the scope of his employment." According to Pfeiffer, the firm accepted his offer by performance when the firm filed the motion to withdraw in the Karolyi matter on November 2, 2018.

Appellees filed a verified answer alleging Pfeiffer had unclean hands and had not mitigated his damages. They alleged Pfeiffer had resigned from the firm in September 2018, and that at that time, the firm told him not to contact clients or do further work for the firm. Appellees alleged that all work for which Pfeiffer sought compensation—a total of $31,000 for fifty-four hours (including thirty-two hours for researching and drafting the motion to withdraw and nineteen hours for administrative work such as "organizing firm files and cleaning out his office")—had been performed after the September 2018 meeting, and for the "period covering October 8 [to] November 2."[6] Appellees asserted counterclaims against Pfeiffer seeking sanctions for violations of Chapter 10 of the Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13.[7] They asserted that

---

[6] In his motion for partial summary judgment, Pfeiffer claimed he was owed "$24,684.93 in unpaid wages from October 6, 2018 through November 27, 2018, and $6,538.46 in unpaid vacation wages for a total of $31,223.39."

[7] *See* TEX. CIV. PRAC. & REM. CODE §§ 10.001, 10.002 (allowing sanctions if pleading or motion is, among other things, filed for "improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation"); TEX. R. CIV. P. 13 (enabling court to impose sanctions if pleading,

Pfeiffer's lawsuit was frivolous, groundless, made in bad faith, and filed to harass Berg and the firm.

Pfeiffer moved for partial summary judgment arguing the parties had "entered into mutual agreements via the *Pro Hac Vice* application," which imposed "significant limitations" on his right to "use his own labor in any lawful employment" and he was thus entitled to summary judgment on his breach of contract claim. He argued (1) he performed billable work and "numerous other uncompensated services" for the firm between October 6 and November 27, 2018 relating to his duties as "attorney of record" and withdrawal from the California Karolyi matter, (2) he sent a written letter to the firm on October 30, 2018 conditioning his resignation from the firm upon his withdrawal from the California case, which Appellees accepted; and (3) the firm maintained malpractice insurance for Pfeiffer through the date the California court signed off on his withdrawal as attorney of record in the Karolyi matter.[8]

Appellees responded that Pfeiffer was an employee at will and that his *pro hac vice* application had not altered his at-will status. They argued that Pfeiffer's employment ended in September 2018, and that issues of material fact precluded

---

motion, or other filed paper is "groundless and brought in bad faith or groundless and brought for the purpose of harassment").

[8] Pfeiffer also filed a motion to dismiss Appellees' counterclaims under Rule of Civil Procedure 91a. The court denied the motion. Because the motion is not germane to the appeal, we do not address it.

summary judgment. Appellees disputed that they had agreed to a new term of employment requiring the firm to pay Pfeiffer after he resigned from the firm. And they disputed they had agreed to pay Pfeiffer until the California court granted the motion to withdraw or otherwise accepted any conditional offer in Pfeiffer's October 2018 letter. Appellees also objected to Pfeiffer's summary judgment evidence.

The trial court denied Pfeiffer's summary judgment motion and sustained most of Appellees' objections to Pfeiffer's summary judgment evidence, including the objection to Pfeiffer's October 2018 letter, which the trial court excluded.[9]

**Trial**

The case was tried to a jury. After Pfeiffer rested, Appellees moved for a directed verdict. The trial court denied the firm's motion, but it granted Berg's motion in his individual capacity and dismissed Pfeiffer's claim against him for breach of contract.[10] The jury deliberated for less than an hour and answered a single question on the jury charge:

**QUESTION NO. 1**

Did Justin Pfeiffer and Berg & Androphy agree to an employment contract?

---

[9] The trial court also denied a motion for summary judgment filed by Berg and the firm. That summary judgment is not relevant to this appeal.

[10] Pfeiffer does not appeal from the directed verdict.

> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

The jury responded "No" and consequently, it did not answer the remaining questions on breach (Question No. 2), damages (Question No. 3), and excuse (Question No. 4).

The trial court entered judgment on the jury's verdict on December 12, 2023, disposing of all claims except the Chapter 10 and Rule 13 counterclaims for sanctions asserted by Appellees.

Pfeiffer filed a motion for new trial arguing the trial court had not "properly instructed" the jury, taken judicial notice of "adjudicative facts of California law," or enforced its rulings on Pfeiffer's motion in limine. Pfeiffer also argued there was insufficient evidence to support the jury's finding that the parties had no contractual relationship because the Karolyis were charged for another attorney's review of his work and Berg told the TWC that "there was an employment agreement for [Pfeiffer's] services as an attorney at the rate of $170,000/annum." Last, he argued that the jury heard "irrelevant and prejudicial evidence" involving "points of contract law," evidence "not related to contract formation," and evidence regarding his sexuality and the national origin of his spouse.

The trial court denied the motion for new trial on March 26, 2024.

**First Motion for Sanctions and Plea to the Jurisdiction**

In January 2024, Appellees filed a motion for sanctions under Chapter 10 of the Civil Practice & Remedies Code alleging Pfeiffer had filed the lawsuit for "improper purposes" and that it was filed in "bad faith and for malicious purposes." The motion incorporated Appellees' counterclaims for sanctions, which remained pending. Appellees requested that the court sanction Pfeiffer in the amount of $457,190, representing the amount of fees the firm had incurred in defending against Pfeiffer's suit.

Pfeiffer filed a plea to the jurisdiction alleging the trial court lacked jurisdiction to consider the motion for sanctions. He argued that because he worked as a county attorney from 2019 through 2021, and he was appointed as a special prosecutor in a civil forfeiture case in 2023, he was entitled to "absolute prosecutorial immunity and derivative governmental and sovereign immunity." Appellees responded that Pfeiffer's claim of immunity was frivolous because there was no connection between Pfeiffer's role as a prosecutor and the sanctions they sought in response to his lawsuit, and Pfeiffer was not acting within the scope of his government employment when he sued Berg.

The trial court conducted a hearing on Appellees' motion for sanctions and Pfeiffer's plea to the jurisdiction. The trial court denied both the motion and the plea in March 2024.

**Second Motion for Sanctions**

In March 2024, Appellees filed a second motion for sanctions against Pfeiffer under Chapter 10 of the Civil Practice and Remedies Code and Rule 13 of the Rules of Civil Procedure, arguing Pfeiffer should be sanctioned for filing the plea to the jurisdiction and a motion to continue Appellees' prior sanctions hearing. They requested sanctions in the amount of $29,552, representing Berg's past and future fees incurred in responding to Pfeiffer's jurisdictional motions and preparing their motion for sanctions.

Pfeiffer argued in response that he was entitled to "[a]bsolute prosecutorial immunity" and that his motion for continuance was not groundless or brought in bad faith, because it was brought "to limit the dollar amount of sanctions over which this Court would have jurisdiction to even consider the merits[.]" Pfeiffer further argued that he sought a continuance to obtain the evidence Appellees planned to use in the sanctions hearing.

The trial court conducted a hearing and denied the motion for sanctions in March 2024. Appellees cross-appeal from the trial court's denial of their second motion for sanctions.[11]

---

[11] Appellees/Cross-Appellants clarify in their brief that the basis of their cross-appeal is the trial court's resolution of their second motion for sanctions. They do not appeal from the trial court's denial of their first motion.

## Pfeiffer's Appeal

Pfeiffer argues on appeal that the trial court erred by (1) denying his motion for partial summary judgment and not making a determination as a matter of law that an employment agreement existed between Pfeiffer and the firm; (2) disallowing Pfeiffer's basic discovery requests; (3) allowing Appellees' counsel "to solicit days of irrelevant testimony"; (4) refusing to instruct the jury regarding "basic principles of contract law in the employment setting," (5) refusing his request to take judicial notice of an attorney of record's duties under California law; (6) denying his motion for entry of judgment after Berg and the firm lost their counterclaims; and (7) not granting his motion for recusal.

## Summary Judgment

In his first issue, Pfeiffer argues the trial court erred in denying his motion for partial summary judgment, in which he argued the parties had an employment contract.[12]

---

[12] Pfeiffer argues he was unable to find any authority that calls for the jury to determine the *formation* of an "employment contract" in an at-will case disputing unpaid wages where all parties acknowledged the existence of an employment relationship." (Emphasis in original.) But here, the parties contested the existence of an employment relationship or employment contract after September 2018. Pfeiffer claimed there was a contract—as required in order to assert a breach of contract claim—that required Appellees to compensate him beyond September 2018, and Appellees argued there was only an at-will relationship, which concluded in September 2018, after which they had no obligation to compensate Pfeiffer.

"It is well established that an order denying summary judgment is not reviewable on appeal after the case has been tried on the merits." *Wil-Roye Inv. Co. II v. Washington Mut. Bank, FA*, 142 S.W.3d 393, 399 (Tex. App.—El Paso 2004, no pet.) (citing *Reese v. Duncan*, 80 S.W.3d 650, 665 (Tex. App.—Dallas 2002, pet. denied)); *see also Cullum v. White*, 399 S.W.3d 173, 188 (Tex. App.—San Antonio 2011, pet. denied) ("The denial of a motion for summary judgment is not reviewable after a trial on the merits."); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 466 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("In issue three, Arias contends the trial court erred in denying his January 13, 2005 third motion for summary judgment against Liberty Mutual. We overrule this issue because there was a jury trial as to all issues not resolved by summary judgment. Arias, therefore, is not entitled to appeal the denial of his motion for summary judgment.").

We overrule Pfeiffer's first issue.

### Discovery Rulings

In his second issue, Pfeiffer argues the trial court erred in "granting some discovery followed by refusing to enforce its order," which led to a "trial by ambush" and constitutes "a prejudicial error of law." Appellees argue Pfeiffer was not prejudiced by the trial court's discovery rulings.

A trial court's denial of discovery is reviewed for abuse of discretion. *Ford Motor Co. v. Castillo,* 279 S.W.3d 656, 661 (Tex. 2009) (citing *TransAmerican Nat. Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991)); *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 688 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("When a trial court denies a motion to compel discovery, the ruling is reviewed under an abuse of discretion standard.") (citing cases).

Pfeiffer argues that the trial court granted his first motion to compel filed in February 2023, requesting the firm's malpractice insurance policies and related correspondence; the Karolyi billing records and retention agreement; the firm's communications with the media concerning Pfeiffer; and Berg's state of residence. After Berg and the firm produced 155 pages of additional communications, Pfeiffer filed a second motion to compel, which he argues the trial court granted. This time, Appellees served fifteen pages of additional discovery. Pfeiffer filed a third motion to compel, which he claims the trial court denied, "reversing course" from its earlier rulings, leading to production of documents at the last minute by Appellees resulting in "trial by ambush."

Pfeiffer contends he has a "clear entitlement" to the requested information and that the trial court's failure to compel production of the Karolyi retention agreement, billing records, and "communications from Appellant's tenure as counsel of record" violated California Law and the Texas Committee on

14

Professional Ethics. He argues that Appellees deliberately "withheld discoverable information concerning a key liability witness" in contravention of the Texas Supreme Court's rule designed "to prevent 'trial by ambush' and to ensure fairness."

Appellees disagree with Pfeiffer's version of events, arguing the trial court did not grant all the relief Pfeiffer claims. They also argue that the discovery about which Pfeiffer complains was not material to his claim for breach of contract. According to Appellees, Pfeiffer does not explain in his brief why the requested information was material or how he was prejudiced by Appellees' production of billing records prior to trial. They further argue that Pfeiffer's objection to the allegedly late production of billing records was not preserved because his argument was made only during discussion of his motion in limine.

Pfeiffer argues in his reply brief that he moved five times to compel discovery of the Karolyi billing records. While Appellees opposed production based on relevancy grounds, they ultimately produced the billing records "on the eve of trial," five days before their preferential trial setting.

The threshold issue here is whether the trial court abused its discretion in denying Pfeiffer's motions to compel discovery.[13] "A party is typically entitled to

---

[13] Pfeiffer's argument that the discovery rulings of which he complains mandate reassignment to a different judge has no bearing on this issue. Pfeiffer has not pointed us to any authority—and we are not aware of any—that allows

15

obtain discovery on any matter that is not privileged and is relevant to the subject matter of the pending action and appears to be reasonably calculated to lead to the discovery of admissible evidence." *Dolcefino*, 548 S.W.3d at 688 (citing TEX. R. CIV. P. 192.3(a)). If we determine there was an abuse of discretion, we must still determine whether the error probably caused the rendition of an improper judgment. *Dolcefino*, 548 S.W.3d at 688 (citing TEX. R. APP. P. 44.1(a)).

The sole question before the jury was whether Pfeiffer and the firm "agree[d] to an employment contract." Pfeiffer does not explain why the categories of documents he sought were relevant to his contract claim, except to say that (1) the Karolyi retention agreement "could well state payment for legal services until the court in which the matter is proceeding grants a withdrawal motion," and (2) the trial court's failure to compel the production of the Karolyi retention agreement, billing records, and communications with the media about Pfeiffer violates California law and a Texas Committee on Professional Ethics opinion.[14] Given the wide latitude afforded to trial courts in ruling on motions to

---

reassignment to another trial court judge as an appellate remedy for a discovery ruling.

[14] Pfeiffer argues he is entitled to the information because the trial court's failure to order its production violates California Rule of Professional Conduct 5.01(b) and 5.01(c)(2) and Texas Committee on Professional Ethics Opinion 670. The State Bar of California's Rules of Professional Conduct do not contain a rule 5.01 but rule 5.1 governs the "[r]esponsibilities of [m]anagerial and [s]upervisory [l]awyers." *See* https://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Rules/Rules-of-Professional-Conduct/Current-Rules (last viewed

compel discovery, and Pfeiffer's failure to explain why the information he sought was relevant to his claims or how the failure to produce such information probably caused the rendition of an improper judgment, we cannot conclude the trial court abused its discretion in denying Pfeiffer's motions to compel or that any error resulted in harm.  *See Shell Oil Co. v. Smith*, 814 S.W.2d 237, 241 (Tex. App.—Houston [14th Dist.] 1991, orig. proceeding) ("Trial courts possess great latitude with which to compel or deny discovery . . . .").

We overrule Pfeiffer's second issue.

### Motion for New Trial

## A.     Prejudicial Comments

In his third issue, Pfeiffer argues he is entitled to a new trial because the trial court allowed the jury to hear "[n]early a [w]eek's [w]orth of [p]rejudicial and

---

January 15, 2026).  Texas Committee on Professional Ethics opinion 670 states in relevant part that

> a lawyer who leaves a law firm may, at the lawyer's expense, make and retain copies of former clients' documents generated in matters in which the lawyer personally represented the clients. The lawyer must, however, comply with his obligation under the Rules to preserve the confidentiality of such documents by preventing the former clients' confidential information from being improperly used or revealed to others

TEX. COMM. ON PROFESSIONAL ETHICS, Op. 670 (2018).  We are not persuaded that either rule or opinion required production of the requested documents or that that the rules or documents are pertinent to the threshold question of whether an employment contract existed between the parties.

[p]rivileged [e]vidence" concerning his sexual orientation and his spouse's national origin.

Appellees argue Pfeiffer failed to preserve error. Alternatively, they argue that Pfeiffer "invited discussion of the information" by bringing up his spouse's relationship with Spanish royalty during trial. They further argue the testimony was relevant because it concerned email communications Pfeiffer exchanged with staff and firm clients, which communications the firm considered inappropriate and resulted in conversations with Pfeiffer leading to his resignation in September 2018.

In his opening brief, Pfeiffer complains of five exchanges involving comments made by Berg or his counsel:

- Berg's testimony referring to Pfeiffer's spouse as his "boyfriend" multiple times, which concerned an email admitted as Defendant's Exhibit 6 in which Pfeiffer referred to his spouse as his "boyfriend" and he mentioned his "royal relatives." Pfeiffer's counsel did not object to admission of the exhibit, nor did he object to the identification of Pfeiffer's spouse as his boyfriend in the email.

- A comment by Berg during his testimony explaining a conversation he had with Pfeiffer stating: "Why do you want to attach yourself to the Spanish royalty? That's one of the most corrupt regimes on Earth." Pfeiffer's counsel did not object to the comment.

- During Pfeiffer's testimony, in reference to an email admitted as Defense Exhibit 5 where counsel asked Pfeiffer about his reference to his boyfriend in the email, Pfeiffer requested that counsel refer to his partner as "my husband." Trial counsel responded, "I will, but in your email here you refer to him as your boyfriend, right?" Pfeiffer's counsel objected to

18

counsel's comment as argumentative and badgering the witness.  Both objections were overruled.

- A reference by defense counsel during Pfeiffer's testimony to the "Queen of Spain," which Pfeiffer argues was a reference to him.  Pfeiffer's counsel objected to the comment as argumentative, but he did not secure a ruling on the objection.  Subsequently, outside the jury's presence, defense counsel said he was "referring to the email . . . royal relatives."[15]

- A question regarding an alleged investigation of Pfeiffer for pedophilia.  Pfeiffer's counsel objected to the question as more prejudicial than probative and improper character evidence.  The court sustained the objections.

Appellees argue that Pfeiffer failed to preserve error as to these allegedly prejudicial comments.  As this Court recently explained, to preserve error with respect to the admission of inadmissible evidence, four steps must be taken.  A party must sequentially pursue an adverse ruling from the trial court by (1) objecting to the complained-of evidence, (2) moving the court to strike the evidence from the record, (3) requesting the court to instruct the jury to disregard the evidence, and (4) moving for a mistrial.  Absent an adverse ruling from the trial court, nothing is preserved for appellate review.  *Shafaii Invs., Ltd. v. Rivera*, ___ S.W.3d ___, No. 01-21-00731-CV, 2025 WL 2485682, at *7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2025, no pet. h.) (quoting *One Call Sys., Inc. v. Houston*

---

[15] Following the objection, the trial court directed the bailiff to escort the jury outside the courtroom, and outside the presence of the jury, the trial court told the parties that he would not tolerate any language that sounded discriminatory.  He asked defense counsel to apologize to Pfeiffer, and defense counsel did so.

*Lighting & Power*, 936 S.W.2d 673, 677 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).[16]

Pfeiffer did not object to the first two complained of statements. With respect to the third, he did not object that the comment by counsel was prejudicial, rather, he objected that counsel's comment was argumentative. Pfeiffer's counsel's only objections throughout the trial to any testimony as prejudicial involved the last comment concerning an alleged investigation for pedophilia and a question as to whether Pfeiffer had tried to get Berg disbarred. Both objections were sustained, but Pfeiffer did not request that the court strike the evidence from the record, instruct the jury to disregard the evidence, or that a mistrial be granted. Consequently, those issues were not preserved for appellate review. *See id.* ("While the trial court sustained [appellant's] objection, [appellant] did not request an instruction from the court instructing the jury to disregard the evidence. The issue was thus not preserved for our review.").

In his reply brief, Pfeiffer argues he preserved error by objecting on the basis of his motion in limine. He identified four instances of allegedly improper questions and testimony where he argues he preserved error. The first one

---

[16] *See also In re O.Z.O.*, No. 14-14-00768-CV, 2015 WL 5093198, at *3 (Tex. App.—Houston [14th Dist.] Aug. 27, 2015, no pet.) (mem. op.) (holding trial court's instruction to disregard prejudicial testimony was not preserved when trial court sustained appellant's objection, struck inadmissible testimony, and instructed jury to disregard, because appellant did not move for mistrial and obtain adverse ruling from trial court regarding mistrial).

involves testimony that defense counsel elicited from Berg concerning Defense Exhibit 6, which was admitted into evidence without objection. *See generally Morales v. Rice*, 388 S.W.3d 376, 381 (Tex. App.—El Paso 2012, no pet.) ("[A] party waives any complaint about the admission of evidence if testimony to the same effect has been previously admitted without objection.") (citing *Atlantic Richfield Co. v. Misty Prods., Inc.,* 820 S.W.2d 414, 421 (Tex. App.—Houston [14th Dist.] 1991, writ denied)).

The second exchange of which Pfeiffer complains involves his motion in limine, which precluded the mention of "other litigation" in which Pfeiffer "was or maybe a party." Berg was testifying regarding Pfeiffer's statement to him that he had been in Ecuador "trying to press charges against his former employee for money laundering."[17] Berg testified the firm had no cases in Ecuador.

The third exchange involved questioning of Pfeiffer. Pfeiffer's counsel stated, "Objection, Motion in Limine No. 2 at this point, where this is going." The court overruled the objection. The questions that preceded the objection sought to determine whether Berg individually owed money to Pfeiffer.

---

[17] Berg said in the email that Pfeiffer told him he was "giving testimony to a foreign government (don't remember which one) to expose money laundering" by a former employer.

21

And the final exchange involved testimony elicited from Pfeiffer regarding the grievances he filed against Berg.[18] Pfeiffer's counsel objected to questions concerning Pfeiffer's statement in the grievance that the Karolyis had appointed him attorney of record in the California litigation. Pfeiffer's counsel argued the question was argumentative, and the court overruled the objection. And Pfeiffer's relevancy objection to a question about Berg being a "proud man" was sustained.

Pfeiffer contends error was preserved because each exchange involved the trial court's grant of a motion in limine; defense counsel's violating the order in limine in the presence of the jury; and the trial court's overruling "its own order" in the jury's presence.

To the extent Pfeiffer relies on his motion in limine and the trial court's ruling on the same to establish preservation, we reject his argument. "A ruling on a motion in limine is not a ruling on the admissibility of evidence and does not preserve a complaint for appellate review." *Calsaro 10000 Old Katy Ltd. v. State*, No. 01-08-00776-CV, 2010 WL 1948315, at *5 (Tex. App.—Houston [1st Dist.] May 13, 2010, no pet.) (mem. op.) (citing *Pojar v. Cifre*, 199 S.W.3d 317, 339 (Tex. App.—Corpus Christi-Edinburg 2006, pet. denied)). "A party who wishes to

---

[18] Pfeiffer objected to the admission of the State Bar of Texas grievance under Texas Rule of Evidence 403, which excludes evidence whose probative value is substantially outweighed by a danger of unfair prejudice, among other things. TEX. R. EVID. 403. He also objected that the document contained privileged information. The trial court overruled the objections.

complain on appeal about a violation of a motion in limine must object when the testimony that is the subject of the motion is offered at trial." *Gallaher v. Brown*, No. 02-07-148-CV, 2008 WL 1777852, at *2 (Tex. App.—Fort Worth Apr. 17, 2008, no pet.) (mem. op.) (citing *Greenberg Traurig of N.Y., P.C. v. Moody,* 161 S.W.3d 56, 91 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). Moreover, none of the cited objections regarding Pfeiffer's motion in limine pertain to the allegedly prejudicial comments regarding Pfeiffer's sexual orientation and his spouse's national origin, about which Pfeiffer complains on appeal.

We conclude Pfeiffer did not preserve error with respect to the purportedly prejudicial testimony of which he complains on appeal.

## B. Collateral Matters

Pfeiffer also argues he was entitled to a new trial because of the admission of "irrelevant evidence of other lawsuits, verdicts, and judgments." He argues the admission of evidence reflecting he filed bar grievances against Berg violated Pfeiffer's privilege and immunity, and that the trial court allowed defense counsel to "badger" Pfeiffer over "collateral" matters such as his prior work experience and the grievance he filed against Berg with the State Bar of Texas. In his reply brief, Pfeiffer argues that the "[v]olume of [p]rejudicial [e]xtraneous [i]nformation" elicited in testimony before the jury prevented the jury from considering his unpaid wage claim.

23

Here again, Pfeiffer has a preservation problem. For example, Pfeiffer argues that the trial court held it was "not concerned with privilege" in the context of Pfeiffer's bar grievances against Berg. He also complains that the trial court allowed "extensive questioning designed to garner undue sympathy, including Appellant calling Berg 'senile.'" But Pfeiffer did not object to this testimony.

When defense counsel asked Pfeiffer if it was "a hundred percent untrue" that the Karolyis had appointed him as attorney of record in the California cases, Pfeiffer's counsel objected to the question as argumentative, and the trial court overruled the objection. While here Pfeiffer did object, Pfeiffer does not explain how the ruling overruling his objection was in error or why it resulted in harm.

Even assuming the trial court abused its discretion in admitting any of the complained-of evidence, "[i]n order to find error through abuse of discretion, we must determine that the admission of [] prejudicial evidence was calculated to cause and probably did cause the rendition of an improper judgment." *Nichols v. Howard Trucking Co., Inc.*, 839 S.W.2d 155, 158 (Tex. App.—Beaumont 1992, no writ). "Normally, reversible error does not occur in connection with evidentiary rulings on questions of evidence unless the whole case turns on the particular evidence admitted or excluded." *Id.* (citing *Atlantic Mut. Ins. Co. v. Middleman*, 661 S.W.2d 182, 185 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.)). When we consider whether error was harmful, "we evaluate the entire case from voir dire to

24

closing argument, considering the evidence, strengths and weaknesses of the case, and the verdict." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 236 (Tex. 2011) (citing *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008)).[19]

Pfeiffer does not explain the complained-of evidence was calculated to cause and probably did cause the rendition of an improper judgment. He merely sates that this was an "action for breach of contract for unpaid wages" and that the trial court "prejudicially erred in admitting multiple collateral issues requiring a new trial." Having reviewed the record, and assuming there was preservation, we cannot conclude that the admission of the evidence at issue "probably caused the rendition of an improper verdict." Nor do we believe the complained-of evidence "probably prevented [Pfeiffer] from properly presenting the case" for review.

We overrule Pfeiffer's third issue.

---

[19] Pfeiffer relies on *Service Corp. International v. Guerra*, 348 S.W.3d 221 (Tex. 2011) for the proposition that the admission of evidence of other "lawsuits, verdict, and judgments" can be reversible error. *Guerra* is distinguishable, as the appellees' attorney in that case "colorfully and skillfully emphasized the evidence of suits, verdicts, and judgments . . . from voir dire through closing argument" and "intended the evidence to be a significant and pervasive part of the trial." *Id.* at 237. On the record before us, notwithstanding any preservation problems, we cannot say that admission of evidence regarding the grievances Pfeiffer filed against Berg were a "significant and pervasive part of the trial."

## Jury Charge

In his fourth and fifth issues, Pfeiffer complains about the instructions in the jury charge, arguing that (1) the trial court's instructions improperly submitted matters of law, not fact, which confused the jury, and (2) the trial court erred in failing to instruct the jury on Pfeiffer's ethical duties imposed by California Law.

We review a trial court's decision to submit or refuse a particular instruction for abuse of discretion. *Certain Underwriters at Lloyd's, London v. Prime Nat. Res., Inc.*, 634 S.W.3d 54, 66 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006)). Trial courts have "great latitude and considerable discretion" in determining jury instructions. *Koukhtiev v. Hiner*, No. 01-13-00356-CV, 2014 WL 4952430, at *6 (Tex. App.—Houston [1st Dist.] Oct. 2, 2014, no pet.) (mem. op.) (quoting *La.-Pac. Corp. v. Knighten,* 976 S.W.2d 674, 676 (Tex. 1998)). A judgment will only be reversed for charge error if the error was "harmful because it probably caused the rendition of an improper verdict or probably prevented the petitioner from properly presenting the case to the appellate courts." *Certain Underwriters*, 634 S.W.3d at 66 (citing TEX. R. APP. P. 44.1); *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009).

## A.      Contract Instruction and Ancillary Issues

In his fourth issue, Pfeiffer argues the trial court erred by failing to instruct the jury that "an employer-employee relationship does not need a written contract." Pfeiffer further argues the trial court erred in allowing the jury to determine whether there was an employment contract, because that was a question of law.

To the extent this argument is premised on Pfeiffer's first issue that the trial court should have granted his motion for partial summary judgment and held there was an employment agreement as a matter of law, we have already concluded that Pfeiffer cannot appeal from the trial court's denial of his partial motion for summary judgment. *Arias*, 265 S.W.3d at 466. With respect to his remaining arguments, we conclude there is no reversible error.

Contrary to Pfeiffer's contention, a jury can be instructed to determine whether a contract exists. The jury question at issue, "Did Justin Pfeiffer and Berg & Androphy agree to an employment contract?" (Question No. 1) tracked Pattern Jury Charge 101.1, which submits to the jury "the issue of the existence of an agreement" and which should be used "if there is a dispute about the existence of an agreement or its terms and a specific factual finding is necessary to determine whether the agreement constitutes a legally binding contract." *See* Comm. on Pattern Jury Charges, State Bar of Tex., TEXAS PATTERN JURY CHARGES: Business Consumer Insurance Employment PJC 101.1 (2024) and cmt.

The existence of an employment agreement requiring Appellees to compensate Pfeiffer for the wages he sought was an issue squarely before the jury. The trial court thus did not err in submitting that question to the jury. *See generally Koukhtiev*, 2014 WL 4952430, at *6 ("Because Question 3 presented the issue in dispute, the trial court did not err in submitting it over Koukhtiev's objection."); *Strad Energy Servs. USA, Ltd. v. Bernal*, No. 04-16-00116-CV, 2016 WL 6242839, at *5 (Tex. App.—San Antonio Oct. 26, 2016, pet. denied) (mem. op.) ("The trial court's question is based on PJC 101.1 which is to be submitted when there is a dispute about the existence of an agreement.").

Pfeiffer argues that Berg swore under penalty of perjury that the parties had an "Employment Agreement" when he completed a TWC form in response to Pfeiffer's wage claim. However, Berg testified that the form was not an employment agreement, but rather a TWC form where he reported the terms of Pfeiffer's employment to the TWC in response to his wage claim.[20] Indeed, Pfeiffer testified during trial about three distinct documents he contended were the "employment agreements"—the *pro hac vice* application, his October 30, 2018

---

[20] Pfeiffer's entire argument with respect to the TWC form hinges on a section on page 2 of the preprinted form entitled, "Employment Agreement." Elsewhere, the document indicates that Pfeiffer's "termination date" was September 20, 2018.

resignation letter, and his exchange with the firm when he was first hired—and none of them was the TWC form on which he now relies. [21]

Pfeiffer relies on *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778 (Tex. App.—Dallas 2015, no pet.) but that case is distinguishable. *Greenville* stemmed from a non-complete agreement included in Anderson's employment contract with Greenville, his former employer. *Id.* at 781. After resigning from Greenville, Anderson started working for Automatic Propane, a competitor. *Id.* Anderson and Automatic Propane brought a declaratory action to establish their rights as they pertained to Anderson's employment agreement with Greenville. *Id.* Greenville countersued for breach of contract. *Id.* at 782. The jury found that Greenville had not established that Anderson had agreed to the terms of the employment agreement.

---

[21] To the extent Pfeiffer argues there was jury charge error because he established the existence of an employment agreement as a matter of law based on his October 30 resignation letter and the *pro hac vice* application, we overrule his issue. Those documents do not establish an employment agreement as a matter of law. Pfeiffer's October 30 letter establishes, at most, that Pfeiffer made certain demands on the firm. But as Appellees argue, there were fact issues concerning the letter and its purported import, including whether Berg knew of Pfeiffer's list of demands in the October 2018 letter, whether the firm accepted Pfeiffer's terms, and whether the firm or Berg accepted Pfeiffer's offer to resign effective November 2, 2018. And Pfeiffer's reliance on the *pro hac vice* application is also problematic. The motion was filed in May 2018—months before Pfeiffer's resignation in September 2018—and it does not constitute an employment agreement or contract as a matter of law.

Greenville appealed the take-noting judgment on its counterclaim for breach. *Id.* Like Pfeiffer does here, Greenville argued that the trial court had erred by submitting a jury question that asked the jury to determine whether Greenville "proved that Anderson agreed to the terms of the Employment Agreement." *Id.* The appellate court agreed with Greenville because, unlike the case here, there was no question about the existence of an employment agreement or its terms. *Id.* at 781 ("The parties agree that, after working for Greenville for several months, Anderson signed an agreement involving his employment."). Greenville had proven the "existence and terms of the contract by pleading and offering the employment agreement, which on its face was signed by Greenville's representative and Anderson." *Id.* at 784. While the appellees later tried to contest the terms of the agreement, they did not file a verified denial and thus, the appellate court concluded they were precluded from challenging the existence or terms of the agreement at trial. *Id.* at 785. In stark contrast, Pfeiffer and Appellees do not agree that there was an employment contract requiring Appellees to compensate Pfeiffer for work beyond September 30, 2018—indeed, that was the crux of the dispute. *Greenville* is thus inapposite.

Pfeiffer also complains about the trial court's refusal to (1) submit instructions on "the elements of the common law claim for breach of contract for unpaid wages"; (2) "modify the instruction to ask the jury whether an 'oral

30

contract' or 'agreement' existed"; (3) submit an instruction telling the jury that the TWC did not have authority to hear his wage claim, and to disregard any action taken by the TWC; and (4) ask the jury if Pfeiffer performed work that Appellees knew or should have known Pfeiffer was performing and the date until which he worked for the firm. Pfeiffer also complains about the inclusion of Question No. 4, which asked whether Appellees' "failure to comply was excused." Question No. 4 was premised on the jury's affirmative findings to Question No. 1 (existence of a contract) and Question No. 2 (breach).[22]

The trial court's refusal to submit instructions on the elements of Pfeiffer's contract claim was within its discretion. "[W]hile the trial court could have given instructions on offer, acceptance, and mutual assent, it was not necessary for it to do so." *Koukhtiev*, 2014 WL 4952430, at *6. "The trial court has great latitude and considerable discretion to determine necessary and proper jury instructions." *Knighten*, 976 S.W.2d at 676 (citing TEX. R. CIV. P. 277).

Pfeiffer also does not explain how his other complained-of jury instructions and questions "probably led to the rendition of an improper verdict." *See Certain Underwriters*, 634 S.W.3d at 66. For example, he argues that the trial court should have instructed the jurors to "decide this matter without regard to any action taken

---

[22] Given the jury's response to Question No. 1 ("No"), the jury did not answer Question No. 4, which instructed in part that the firm's failure to comply with the purported contract was "excused if there was good cause for discharging Justin Pfeiffer before the agreed term of employment expired."

31

by TWC because TWC did not reach a decision on [the] claim." But as he notes in his brief, the trial court sustained his objection to defense counsel's question as to the outcome of the TWC proceeding and the question was never answered. It is thus unclear how that question—which the witness did not answer—makes the omission of the jury instruction on that issue "particularly egregious."

Pfeiffer also complains about Question No. 4, which asked whether the firm's failure to comply was excused. Because the jury did not reach Question No. 4, it cannot be the basis for an improper verdict. *See Air Prods. & Chems., Inc. v. Odfjell Seachem A/S*, 305 S.W.3d 87, 101 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (concluding apportionment question in jury charge that was not answered was "plainly immaterial" even if trial court erred in allowing question because of jury's finding of no negligence); *Tindall v. Ledford*, No. 07-96-0400-CV, 1998 WL 78297, at *6 (Tex. App.—Amarillo Feb. 25, 1998, pet. denied) (not designated for publication) (holding when jury answered negatively to improper fraud question but failed to answer following exemplary damage question, improper submission of questions "did not amount to reversible error").

Pfeiffer next addresses the trial court's refusal to ask the jury about work he purportedly performed that Appellees knew or should have known about, but for which he was not paid. Pfeiffer argues the instructions were "particularly necessary to avoid juror confusion," but he does not fully explain why. He argues

32

that the trial court's admission of evidence concerning "sexual orientation, national origin, wealth, and collateral proceedings, compelled the trial court to obtain the jury's answer to factual disputes regarding the wages at issue." But there is no discussion of how the failure to ask the jury about work performed for the Karolyi case after September 2018—which presumably is what Pfeiffer is arguing about here—has any bearing on evidence admitted or comments made about "sexual orientation, national origin, wealth, and collateral proceedings." Nor is there any indication in the record that the jury—which deliberated for less than an hour—was confused. And here again, there is no discussion of how the lack of instruction probably resulted in an improper verdict, other than an argument that defense counsel's questions during the trial called for legal conclusions.[23]

We overrule Pfeiffer's fourth issue.

## B. California Law

In his fifth issue, Pfeiffer complains that because the jury heard "multiple references to California ethics law," coupled with defense counsel's statement that Pfeiffer's understanding of California ethics law was a "gross misstatement of the law," the trial court committed reversible error in failing to take judicial notice of

---

[23] In his brief, Pfeiffer complains that questions by defense counsel "mischaracteriz[e] [Pfeiffer's] testimony that the pro hac vice agreement constituted a written contract." But Pfeiffer testified that the *pro hac vice* motion created an employment agreement such that he could not be terminated until the trial court signed the withdrawal order "because of the circumstances of the case."

California ethics law and in refusing to instruct the jury about Pfeiffer's ethical duties under California law. Pfeiffer's request for inclusion of an instruction on California law was titled "Instructions on the Duties of a California Attorney of Record." The proposed instruction stated:

> In connection with Mr. Pfeiffer's employment with Defendants, Mr. Pfeiffer served as "Attorney of Record" for Bela and Martha Karolyi in two California-based matters consolidated in [the] *Nassar Cases*, arising out of Larry Nassar's adjudicated sexual molestation of members of the U.S. Women's Gymnastics World Championship and Olympic Teams for which the Karolyis served as head coaches.
>
> On June 22, 2018, the United States Olympic Committee removed one of the matters to federal court. After which, upon agreement with Defendants, Pfeiffer filed in the case as "Attorney of Record" in Central District of California—a federal court in California—on June 29, 2018. That Court follows the standards of conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct, and the decisions of any court applicable thereto. Under California law, an Attorney of Record may "not withdraw from employment in a proceeding before [a] tribunal without its permission."
>
> In the Central District of California, "an attorney may not withdraw as counsel except by leave of court. The motion for leave to withdraw must be supported by good cause. "When an Attorney of Record for any reason ceases to act for a party, such party must appear pro se or appoint another attorney by a written substitution of attorney signed by the party and the attorneys."
>
> Last, an "Attorney of Record" is accorded special responsibilities under California law. "[T]he attorney of record has the exclusive right to appear in court for his client and to control the court proceedings, so that neither the party himself can be recognized by the court in the conduct of disposition of the case." "If the attorney of record, however, associates another attorney with him, it rests with them to divide up the duties concerning the conduct of the cause."

34

When the "the [sic] associated attorney attempts to act as the sole attorney," the attorney of record and the associated attorney must follow the Court's rules to substitute counsel. In California, a lawyer is obligated to continue to represent the client of the tribunal denies the motion to withdraw.

(Citations omitted.)

The threshold issue before the jury was whether an employment contract existed requiring payment of Pfeiffer's alleged unpaid wages. Pfeiffer fails to demonstrate how taking judicial notice of California law concerning the duties of an attorney of record or this instruction would have had any bearing on this question. Nor has Pfeiffer established how the trial court's failure to include such an instruction probably resulted in the rendition of an improper verdict.

We overrule Pfeiffer's fourth and fifth issues.

**Finality of the Judgment**

In his sixth issue, Pfeiffer argues that because the trial court's March 8, 2024 order—which he contends is the order that "disposed of the claims of all the parties"—lacks the required "Mother Hubbard" language that the Supreme Court required in *In re Elizondo*, 544 S.W.3d 824 (Tex. 2018) (orig. proceeding), it requires reversal.

The trial court entered judgment on the jury verdict for Appellees on December 12, 2023. The judgment included finality language that stated it "dispose[d] of all claims and parties in this case except for [Appellees'] request for

sanctions and is a final judgment." *See In re C.K.M.*, 709 S.W.3d 613, 618 (Tex. 2025) (holding that to be final judgment, order must state "it is final or that it is appealable or that it disposes of all claims and parties"). Appellees' counterclaims for sanctions were denied by written order on March 8, 2024. The trial's court March 8, 2024 order thus disposed of all remaining claims and became a final judgment that subsumed the prior December 12, 2023 order. *See Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders*, *LLC*, 603 S.W.3d 385, 390 (Tex. 2020) ("When a trial court renders a final judgment, the court's interlocutory orders merge into the judgment and may be challenged by appealing that judgment."); *Ford v. Ruth*, No. 03-14-00460-CV, 2016 WL 1305209, at *3 (Tex. App.—Austin Mar. 31, 2016, pet. denied) (mem. op.) ("When a final judgment resolves all claims in a case, any previous interlocutory judgment or order is merged into that final judgment.").

"The language of an order can be sufficient to indicate finality, but finality language is not necessary to make an order final and appealable." *Pletta v. ORO AII Com., LLC*, No. 01-19-00966-CV, 2021 WL 5773882, at *6 (Tex. App.—Houston [1st Dist.] Dec. 7, 2021, pet. denied) (mem. op.). "An order that is otherwise final—i.e., an order that actually disposes of all claims and parties, regardless of its language—cannot become interlocutory based on a lack of finality language." *Id.*; *see also Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex.

36

2001) ("The language of an order or judgment cannot make it interlocutory when, in fact, on the record, it is a final disposition of the case."). "If there is any doubt as to the judgment's finality, then '[f]inality must be resolved by a determination of the intention of the court [as] gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties.'" *Vaughn v. Drennon*, 324 S.W.3d 560, 563 (Tex. 2010) (citing *Lehmann,* 39 S.W.3d at 203).

The finality language of the December 12, 2023 judgment expressly disposed of all claims except Appellees' counterclaims. When that order was merged into the March 8, 2024 order that disposed of the remaining counterclaims, the judgment became final and disposed of all parties and all claims. There is no interlocutory order pending before this Court.[24]

Pfeiffer also argues that the trial court erred in awarding Appellees $133.63 in court costs. Pfeiffer cites several cases for the proposition that "the trial court should require each party to bear its own costs." But the cited authorities illustrate that this is a matter within the discretion of the trial court. *See, e.g., Casaubon Firm v. Tex. Mut. Ins. Co.*, 657 S.W.3d 1, 15 (Tex. App.—El Paso 2021, pet. denied) ("[W]hen the parties have filed both claims and counterclaims, and neither

---

[24]    We further note that even if the March 8, 2024 order were not a final order, the remedy would be for our Court to dismiss the appeal, not to reverse for further proceedings in the trial court, as Pfeiffer requests. *See Channelview MHP, LLC v. Hernandez*, No. 01-24-00931-CV, 2025 WL 51845, at *1 (Tex. App.—Houston [1st Dist.] Jan. 9, 2025, no pet.) (mem. op.).

party is wholly successful on either, the trial court does not abuse its discretion in ordering each party to bear its own costs.") (citing cases). Further, "[t]he plain language of Rule 131 does not expressly require an allocation of costs between unsuccessful parties." *Durant v. Anderson*, No. 02-14-00283-CV, 2020 WL 1295058, at *36 (Tex. App.—Fort Worth Mar. 19, 2020, pet. denied) (mem. op.).[25] We conclude the trial court did not abuse its discretion in ordering Pfeiffer to pay Appellees' court costs.

In his reply brief, Pfeiffer argues the trial court "failed to provide [him] the opportunity to request attorney's fees for the meritless sanctions motions." Pfeiffer participated in two sanctions hearings and had the opportunity to request attorney's fees. He failed to do so.

We overrule Pfeiffer's sixth issue.

### Recusal Motions

In his seventh issue, Pfeiffer argues that the regional administrative judge erred in denying his motions to recuse the trial court judge because she used the wrong legal standard in ruling on his motions. He argues that because the trial court judge received a campaign contribution from Appellees' counsel's law firm

---

[25] Texas Rule of Civil Procedure 131 states, "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131.

38

and named partner, his impartiality came into question, and he should have been removed from the case.[26]

We review the denial of recusal motions for abuse of discretion. *Jackson v. Puckett*, No. 01-22-00369-CV, 2023 WL 1786427, at *2 (Tex. App.—Houston [1st Dist.] Feb. 7, 2023, pet. denied) (mem. op.) (citing TEX. R. CIV. P. 18a(j)(1)(A) ("An order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment.")).[27] In determining whether the trial court abused its discretion, we do not determine whether we would have decided a matter in a different manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). Rather, a reviewing court determines whether the trial court

---

[26] Pfeiffer argued in his motion to recuse that the trial court judge failed to enforce his own orders and refused to grant an oral hearing on Pfeiffer's "legitimate attempt to obtain written and oral discovery." The second motion to recuse argued that the trial court judge (1) allowed counsel for Appellees "to engage innumerous attacks against Plaintiff and Plaintiff's spouse and family based on sexual orientation and national origin," (2) denied Pfeiffer's right to "narrow" the "improper counterclaims" asserted by Appellees against Pfeiffer for his "clearly immune actions," (3) failed to grant an oral hearing on Pfeiffer's "legitimate attempts to obtain relief," and (4) there was an appearance of impropriety because Appellees sought to sanction Pfeiffer for questioning the trial court's receipt of campaign contributions.

[27] Pfeiffer alleges that a "man on the street" standard applies to recusal motions, citing *Duffey v. State*, 428 S.W.3d 319, 325 n.12 (Tex. App.—Texarkana 2014, no pet.). *See Aguilar v. Anderson*, 855 S.W.2d 799, 804–05 (Tex. App.—El Paso 1993, writ denied) (Osborn, C.J., concurring) (discussing "reasonable person on the street" standard and noting that "'reasonable' person must also know that in judicial races most contributions are made by practicing attorneys."); *see also Duffey*, 428 S.W.3d at 324-25 (noting motion to recuse is reviewed for abuse of discretion, and appellate courts apply "reasonable person standard in determining whether a recusal motion should have been granted") (citation omitted).

acted without reference to any guiding principles or whether the trial court's actions were arbitrary or unreasonable. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex. 1986); *Downer*, 701 S.W.2d at 242.

Pfeiffer argues that neither the "trial judge nor the regional administrative judge applied the 'objective reasonable person standard," and such error presents an "error of constitutional magnitude." He cites to two pages of the appendix— one a page from a motion in limine and the other one the order denying his second motion to recuse.

There is nothing in the record reflecting the wrong legal standard was applied in denying Pfeiffer's recusal motions. Both orders denying recusal state the respective motions did not "state legally sufficient grounds for disqualification or recusal. Recusal is not appropriate when relief can be found in the appellate process." The orders state that the motions "complain[] mainly of the trial judge's rulings and actions in the case. A party's remedy for unfair rulings is to assign error regarding the adverse rulings." They note that the recusal rule in the Texas Rules of Civil Procedure "unambiguously indicates that a motion to recuse 'must not be based solely on the judge's rulings in the case.'" (citing Tex. R. Civ. P. 18a(a)(3)).

To the extent Pfeiffer argues that the motions should have been granted based on the trial court judge's receipt of campaign contributions, the "mere

40

receipt of campaign funds, in and of itself, without an indication of communication about, or coordination of, the handling of a case, is not a basis for recusal." *Dawson v. Pakenham*, No. 14-24-00391-CV, 2025 WL 1405008, at *7 (Tex. App.—Houston [14th Dist.] May 15, 2025, no pet.) (mem. op.) (citing *Martinez v. Capstone Associated Servs., Ltd.*, No. 14-21-00560-CV, 2023 WL 5034531, at *6 (Tex. App.—Houston [14th Dist.] Aug. 8, 2023, pet. denied) (mem. op.)); *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 844–45 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (holding campaign contribution did not constitute "appearance of impropriety" such that recusal was warranted under judicial cannon or U.S. constitution); *Estate of Nunu*, 542 S.W.3d 67, 88 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("In extreme circumstances, political contributions can support a judge's recusal from a case."); *Dawson*, 2025 WL 1405008, at *7 ("It is only in extreme circumstances that the amount of a contribution can support a judge's recusal from a case."). We thus conclude the regional administrative judge did not abuse her discretion in denying Pfeiffer's recusal motions.

We overrule Pfeiffer's seventh issue.

## Cross-Appeal

In their cross-appeal, Appellees/Cross-Appellants argue the trial court abused its discretion in denying their second Motion for Sanctions and refusing to impose sanctions on Pfeiffer under Chapter 10 and Rule 13.

## Standard of Review and Applicable Law

We review a trial court's award or denial of sanctions for an abuse of discretion. *Low v. Henry,* 221 S.W.3d 609, 614 (Tex. 2007); *Gomer v. Davis*, 419 S.W.3d 470, 477 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("The imposition of sanctions pursuant to both Rule 13 and Chapter 10 is within the discretion of the trial court, and we therefore review the court's sanctions order for an abuse of discretion.") (citing cases). We can reverse the trial court's ruling on a sanctions order "only if the court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Id.* (citing *Low*, 221 S.W.3d at 614). There is a general presumption that parties file their pleadings in good faith, and it is the party that seeks sanctions that bears the burden of overcoming that presumption. *Id*. (citing *Low*, 221 S.W.3d at 614).

Rule 13 requires imposing sanctions on attorneys or represented parties who sign pleadings that are "groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13. A pleading is "groundless" if it has "no basis in law or fact and [is] not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.* "Improper motive is an essential element of bad faith. Bad faith is more than just bad judgment or negligence; bad faith 'means the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose.'" *Gomer*, 419 S.W.3d at 478

(citing *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet.

denied)).

Chapter 10 of the Civil Practice and Remedies Code permits the imposition

of sanctions for violations of Section 10.001. That section provides:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE § 10.001; *see also id.* § 10.002 (authorizing

sanctions for violation of Section 10.001). "Sanctions under [C]hapter 10 of the

Civil Practice and Remedies Code are authorized if the evidence establishes that

(1) a pleading or motion was brought for an improper purpose, (2) there were no grounds for legal arguments advanced, or (3) a factual allegation or denial lacked evidentiary support." *Mattox v. Grimes Cnty. Comm'rs Ct.*, 305 S.W.3d 375, 386 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE § 10.001).

## Discussion

When Cross-Appellants filed their first motion for sanctions seeking sanctions against Pfeiffer for his filing and prosecution of the lawsuit, Pfeiffer filed a plea to the jurisdiction seeking to dismiss the motion. He argued that because he worked as a county attorney from 2019 through 2021 and had been appointed as a special prosecutor in a civil forfeiture case in 2023, he was entitled to "absolute prosecutorial immunity and derivative governmental and sovereign immunity." Cross-Appellants responded that Pfeiffer's claim of immunity was frivolous because there was no connection between Pfeiffer's role as a prosecutor and the sanctions they sought in response to his lawsuit, and further that Pfeiffer was not acting within the scope of his government employment when he sued Berg. The court denied both the motion and the plea on March 8, 2024.

A few days later, on March 11, 2024, Cross-Appellants filed a second motion for sanctions under Chapter 10 and Rule 13 premised on Pfeiffer's jurisdictional pleading. Cross-Appellants argued the plea was groundless and

violated Chapter 10 because it lacked any factual or legal basis and was not warranted by a nonfrivolous argument to extend, modify, or reverse existing law. They also argued the plea was brought for an improper purpose. And they argued the plea violated Rule 13 because it was groundless and brought in bad faith.

Following a hearing, the trial court denied the motion. During the hearing, the trial court stated, among other things:

> The fact that [Pfeiffer] set a plea to the jurisdiction prior to the sanctions hearing, demanded in an e-mail to this Court and then by mandamus, the Court rule on the plea to the jurisdiction prior to taking up the sanction material, all of it, as well as some of the other materials provided by opposing counsel, show that the plea to the jurisdiction was not for any purpose other than delay.

Cross-Appellants argue that, given the evidence before the trial court, and this finding, the trial court abused its discretion in refusing to sanction Pfeiffer. They argue the trial court had to "grant or deny sanctions based on the evidence before it and applicable law" but refused to do so, "abdicat[ing] its duty to consider sanctions to the appellate court," even though the trial court had plenary power on the day of the sanctions hearing. Further, they argued,

> from the trial court's own observations, the evidence before the trial court established that the Jurisdiction Motions were groundless and brought for an improper purpose. Pfeiffer offered no controverting evidence. As a result, the trial court's ruling does not match its own view of the evidence.

Pfeiffer does not address Cross-Appellants' narrow argument that the trial court abused its discretion in refusing to award sanctions despite its finding that

"the plea to the jurisdiction was not [brought] for any purpose other than delay." Rather, Pfeiffer argues that (1) Cross-Appellants cannot seek sanctions for a filing that delayed the sanctions hearing, which was conducted after the trial court's plenary power expired; (2) filing a plea to the jurisdiction was the proper method to challenge sanctions for filings in other courts; (3) the sanctions were aimed at prosecutorial acts in other courts; (4) Cross-Appellants waived their right to seek sanctions regarding the plea to the jurisdiction; and (5) Cross-Appellants sought inappropriate attorney's fees in their motion for sanctions.

Cross-Appellants argue in their cross-reply brief that the trial court "did not base its denial of the Second Sanctions Motion on any procedural problem because there was none." Cross-Appellants argue that the trial court had plenary power through March 26, 2024, because final judgment was entered on December 12, 2023, and Cross-Appellants filed a motion for sanctions on January 10, 2024, which extended the trial court's plenary power to March 26, 2024.[28] *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 312 (Tex. 2000) (holding post-judgment motion for sanctions "proposed a substantive modification" to judgment and thus extended trial court's plenary jurisdiction); *see also* TEX. R. CIV. P. 329b(c), (e).

---

[28] The March 26, 2024 plenary power cutoff supposes the judgment entered on December 12, 2023 was, indeed, the final judgment. Given our conclusion that the March 8, 2024 sanctions order was the final judgment, as discussed above, the trial court's plenary power expired on April 7, 2024.

A trial court's refusal to impose sanctions will be reversed only upon a clear showing of an abuse of discretion. *Shannon v. Fowler*, 693 S.W.2d 54, 56 (Tex. App.—Fort Worth 1985, writ dism'd) (citing *Tenngasco Gas Gathering Co. v. Fischer,* 624 S.W.2d 301, 303 (Tex. App.—Corpus Christi-Edinburg 1981, writ ref'd n.r.e.)). "A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that the ruling is arbitrary or unreasonable." *Pressley v. Casar*, 567 S.W.3d 327, 333 (Tex. 2019) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)).

"A [party] who attacks the ruling of a trial court as an abuse of discretion labors under a heavy burden." *Wyler Indus. Works, Inc. v. Garcia*, 999 S.W.2d 494, 499–500 (Tex. App.—El Paso 1999, no pet.) (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)). "Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *In re K.N.R.*, No. 05-03-00214-CV, 2004 WL 878273, at *1 (Tex. App.—Dallas Apr. 26, 2004, no pet.) (mem. op.) (citing *Downer*, 701 S.W.2d at 241–42). "A mere error of judgment is not an abuse of

discretion." *Wyler Indus. Works*, 999 S.W.2d at 500 (citing *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex. 1989)).[29]

In our analysis, we must consider "not whether sanctions may have been appropriate, but whether they were mandatory." *Malouf v. Elana Spitzberg Tr*., No. 05-15-00824-CV, 2016 WL 4158890, at *3 (Tex. App.—Dallas Aug. 5, 2016, no pet.) (mem. op.) (citing *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex. 1984)). That is, even if the trial court was required to make all the necessary findings in favor of Cross-Appellants, to prevail in their cross-appeal, Cross-Appellants must "further show that the trial court had no discretion to refuse to assess sanctions." *Id*.

Chapter 10 states that a trial court "may" award sanctions if a pleading is filed in violation of its provisions. TEX. CIV. PRAC. & REM. CODE § 10.004; *see also Rogers v. Walker*, No. 13-12-00048-CV, 2013 WL 2298449, at *10 (Tex. App.–Corpus Christi-Edinburg May 23, 2013, pet. denied) (mem. op.) (noting Chapter 10 permits, but does not require, trial court to impose sanctions). Given the trial court's discretion under Chapter 10, we cannot conclude the trial court's refusal to award sanctions under its provisions was arbitrary, unreasonable, or without any reference to guiding rules or principles.

---

[29] *But see Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018) ("We afford no deference when the record affirmatively establishes the court could not have properly exercised its discretion.").

Rule 13, however, does not provide include the discretionary "may" language. Rather, it provides in pertinent part, "If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, *shall* impose an appropriate sanction available under Rule 215[.]" TEX. R. CIV. P. 13.[30] (Emphasis added.) To secure sanctions under Rule 13, a party must prove both that the pleading at issue was "groundless *and* brought in bad faith or groundless *and* brought for the purpose of harassment." *Id.* (emphasis added); *see also Swan v. Dixon*, No. 09-25-00168-CV, 2025 WL 2726524, at *5 (Tex. App.—Beaumont Sept. 25, 2025, no pet. h.) (mem. op.) ("Under Rule 13, the movant must establish that the filing is groundless and either brought in bad faith, brought for the purpose of harassment, or false when made."). The trial court concluded that Pfeiffer's plea was brought for the purpose of delay. But the trial court did not make a finding that the plea to the jurisdiction was "groundless and brought in bad faith or groundless and brought for the purpose of harassment." "Even if the trial court could have inferred bad faith or intent to

---

[30] A footnote to Rule 13 states that "Rule 215" probably refers to Rule 215.2(b), which enumerates types of sanctions that may be imposed if a party fails to comply with an order to provide or permit discovery or with a discovery request. TEX. R. CIV. P. 215.2(b). Those sanctions include the award of reasonable expenses including attorney fees. *Id.* 215.2(b)(8).

49

harass from the lack of legal basis for the suit, it was not required to do so." *In re K.N.R.*, 2004 WL 878273, at *2.[31]

We thus hold the trial court did not abuse its discretion in declining to impose sanctions against Pfeiffer.

## Evidentiary Hearing

Cross-Appellants argue the trial court abused its discretion in refusing to allow testimony "that Berg sought to offer from Pfeiffer concerning Pfeiffer's state of mind and purpose in preparing, signing, and filing the Jurisdiction Motions." If this Court does not reverse the trial court's denial of their second motion for sanctions, Cross-Appellants request that we reverse and remand for "further sanctions proceedings"—presumably to allow this testimony.

In determining whether to award sanctions, the trial court generally is required to conduct an evidentiary hearing to "make a determination about the motives and credibility of the person signing the petition." *Gomer*, 419 S.W.3d at 479 (quoting *Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 139 (Tex. App.—Texarkana 2000, no pet.)). However, "[u]nder some circumstances, the trial court may be able to make such a determination by taking judicial notice of items in the

---

[31] "Bad faith does not exist when a party merely exercises bad judgment or is negligent—rather bad faith is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *In re K.N.R.*, No. 05-03-00214-CV, 2004 WL 878273, at *2 (Tex. App.—Dallas Apr. 26, 2004, no pet.) (mem. op.) (citation omitted). "To 'harass' means to annoy, alarm, and verbally abuse another person." *Id.* (citation omitted).

case file." *Mecom*, 28 S.W.3d at 139;[32] *see also Nguyen v. Aventus Ins. Co.*, No. 14-19-00607-CV, 2021 WL 4472479, at *1 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op.) (noting that Texas Supreme Court in context "directly analogous" to Rule 13 has held that "Rule [of Civil Procedure] 215.3's authorization of sanctions 'after notice and hearing' does not indicate a requirement of an oral hearing.") (citing *Cire*, 134 S.W.3d at 844.

As with Rule 13, the trial court is required to have an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the party or the attorney to impose sanctions under Section 10.001(1). *Gomer*, 419 S.W.3d at 480. "The party moving for sanctions must prove the pleading party's subjective state of mind, and, thus, without an evidentiary hearing, the court lacks evidence to determine whether a pleading was filed in bad faith or for the purpose of harassment." *Id.* (citing *R.M. Dudley Constr. Co., Inc. v. Dawson*, 258 S.W.3d 694, 710 (Tex. App.—Waco 2008, pet. denied)). Although the trial court must hold a hearing to receive evidence, in some circumstances, "it may also take judicial notice of the evidence in the case file, including any pleadings and orders." S*ee Sakonchick v. Overlook at Rob Roy Owner, LLC*, No. 03-23-00085-CV, 2025 WL 626590, at *17 (Tex. App.—Austin Feb. 27, 2025, pet. denied) (discussing

---

[32]    *But see Emmons v. Purser*, 973 S.W.2d 696, 701 (Tex. App.—Austin 1998, no pet.) (stating even though court took judicial notice of case file, nothing in file proved bad faith by sanctioned parties).

Rule 13 and Chapter 10); *R.M. Dudley Constr. Co.*, 258 S.W.3d at 710 ("In some circumstances, a trial court may take judicial notice of the case file for purposes of ruling on a sanctions motion.") (discussing Rule 13 and Chapter 10) (citing *Elkins v. Stotts–Brown*, 103 S.W.3d 664, 667 (Tex. App.—Dallas 2003, no pet.)).

The trial court conducted a hearing on the second sanctions motion and during that hearing, it took judicial notice "of the court's file and all the filings that are subject, the pleadings, the responses that are the subject of today's hearing." The court apparently also took judicial notice of the "arguments presented in that [first] Motion for Sanctions [filed] on March 11 and Pfeiffer's [trial] testimony." In light of the foregoing, we hold the trial court did not abuse its discretion in declining to hear testimony from Pfeiffer during the hearing about his state of mind and purpose in preparing, signing, and filing the plea.

We overrule Cross-Appellants' sole issue.

## Conclusion

We affirm the trial court's judgment.


Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

Gunn, J., concurring.

52